## DAILEY v. DAILEY.

### No. 11847.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1935.

Rehearing Denied Nov. 23, 1935.

Goode, VanNort. & Robertson, of Dallas, for plaintiff in error.

Jim Baker and Lee R. Stroud, both of Dallas, for defendant in error.

LOONEY, Justice.

J. L. Dailey and wife, Elizabeth Dailey, were divorced, after which Mrs. Dailey sued to have the community property partitioned. Upon the hearing the court determined that the property was susceptible of partition, hence directed an equal division, appointed three qualified commissioners, two of whom acted and filed their report, to which defendant (J. L. Dailey) filed objections. On trial of the issues presented, the court confirmed the report of the commissioners and entered decree accordingly, from which the defendant appealed by writ of error.

One contention is that certain real and personal properties belonging to the community estate of plaintiff and defendant, described in a pleading filed in the court below on October 13, 1933, were not partitioned or mentioned in the report of the commissioners; therefore, the report was incomplete. In answer to this objection, plaintiff filed in court a waiver of all her right, title, and interest in and to all and singular said omitted property, and requested the court to decree same to the defendant; whereupon, the court entered its decree divesting title to said property out of plaintiff and vesting same in defendant. In view of these proceedings, the objection was satisfied and, in future proceedings, the real and personal property involved are removed from further consideration.

Defendant objected that the report of the commissioners was unequal, unjust, and should be rejected and other commissioners appointed, in that the property composing the share set apart to him was materially overvalued, whilst the property set apart

to plaintiff was materially undervalued. Among other property, the commissioners set apart to the plaintiff, at a valuation of $11,057, lots Nos. 5, 6, and 11 in block 1347B, city of Dallas, together with all improvements. This property formerly constituted both the residence and business homestead of the family. In support of his objection, defendant offered the testimony of three witnesses as to the value of this property. Mr. Rabinowitz testified that the lands, buildings, oil tanks, and equipment were of the market value of $20,000, and that the good will of the (oil) business was of the value of $10,000, making a total valuation of $30,000. Mr. Martin testified that the lands and houses were of the value of $14,225, and that the overhead and underground oil tanks, pumps, and equipment were worth $16,500, making a total valuation of $30,725. Mr. Staten placed a value on the real estate and houses, but not including the tanks and oil business equipment, at $8,937.50.

The only evidence as to value introduced by plaintiff was the testimony of Mr. Goodman, who valued the houses and lots at $7,500, and certain tanks, of the same or approximately the same size as the tanks installed on the property at $1,175, making a total valuation of $8,675. However, this witness was not questioned, nor did he testify as to the value of the four overhead 9,000-gallon capacity tanks valued by the witness Martin at $4,000; nor as to the value of the 2,600 gallon capacity coal oil tank valued by Martin at $2,500; nor as to the value of the two overhead 20,000 gallon capacity tanks on steel frames, valued by Martin at $5,000; nor as to the value of the pumps valued by Martin at $1,000; nor did the witness testify as to the cost of installing the tanks, in regard to which he gave testimony as to value.

The uncontradicted testimony of the witness Martin also shows that an unimproved lot 50x50 (item 13 of the commission's report) allotted to defendant at $500 was so inaccessible and hedged about with other lots as to be without any market value; that a series of 12 unimproved lots (item 20 of the report) allotted to defendant at $2,000 did not exceed $1,000 in value; that 143 acres of land in Dallas county (item 23 of the report) allotted to defendant at $7,685 was not worth in excess of $50 per acre, or $7,150; that the equipment of a filling station on leased property (item 16 of the report) allotted to defendant at $1,200 was not worth in excess of $200.

Without comment upon this testimony, we think it shows with reasonable certainty that the report was unequal and unjust to the defendant, and should have been rejected by the trial court and other commissioners appointed.

In view of certain matters mentioned in the discussion, that may or may not be material for the consideration of the commissioners in making a partition, we are moved to make the following observations: If, since partition was decreed, any property belonging to the community estate has been unavoidably lost, by foreclosure or sale in satisfaction of community debts, such loss would be that of the community, and any such should not be considered or partitioned by the commissioners. As provided in the decree of partition, the commission should take into consideration all judgments or other lien debts and interest therein, including taxes existing against the estate; also the value of the use and occupation of the property, and rents, if any, collected by either party, since the decree of partition should be taken into consideration in the adjustment of equities; but as general unsecured debts against the community estate, if any existed, were not disposed of or mentioned in the partition decree, they should not be considered by the commissioners; however, this statement will not be construed to prejudice either party paying any such debt, from asserting a lien on the share allotted to the other, for reimbursement for any sum paid over and above one-half the amount of such debt. Debts contracted by either party since the decree of partition was entered, are not a charge against the community estate, hence should not be considered by the commissioners in making partition.

If the commissioners should find that it is impracticable to allot shares of exact equal value, such inequality may be corrected by charging the share of greater value with a lien in favor of the share of less value with an amount sufficient to equalize the values, which shall constitute an incumbrance in the nature of a vendor's lien against the share of greater value, but shall not be considered a personal obligation. Moor v. Moor (Tex.Civ. App.) 63 S.W. 347; Moor v. Moor, 31 Tex.Civ.App. 137, 71 S.W. 794.

The judgment of the lower court, confirming the report of the commissioners, is reversed and the cause remanded, with directions that other commissioners be appointed by the court, and the same proceedings had as in the first instance.

Reversed and remanded.

### On Motion for Rehearing.

BOND, Justice (dissenting).

I do not deem it important to enter into a very extensive discussion on the question decided in the majority opinion. The law books are replete, tersely and accurately expressing the opinion that where there is substantial evidence in the record supporting the judgment of the trial court, it is the duty of appellate courts to affirm the judgment.

The record in this case reveals that the trial court appointed three disinterested persons, to wit, M. F. White, a real estate man; J. G. Marrow, a real estate man, and John R. West, Jr., the county surveyor of Dallas county, Tex., to partition the community property in issue. Two of the members of the commissioners filed into court a report, under their oaths, reciting that they had carefully inspected the property in litigation and that they had apportioned it fairly, justly, and equally between the plaintiff and the defendant, giving in detail the value of each piece of property and to whom it was apportioned. There can be no question but that the report, in terms, disclosed a fair and equal division of the property between the parties, and that the commissioners took into consideration as they had a right to do, the indebtedness and the relative ability of the parties to handle the indebtedness. The action of the commissioners should not be disturbed in the absence of clear evidence of their partiality or unfairness. Moor v. Moor (Tex.Civ.App.) 63 S.W. 347. It clearly appears from the record that the commissioners were not partial and that no injustice was done to the plaintiff in error.

In the trial of the cause, without objection, the plaintiff offered in evidence the report of the commissioners, with its accompanying affidavits, as a part of her evidence, to controvert the testimony of defendant's witnesses, as to the value of the property in question and the equitable partition thereof. Evidently, the report was of some weight on the issues involved, and, in in my opinion, its introduction in evidence, without objection, was such as to make out a prima facie case in favor of the defendant in error; and, at least, by the controverting testimony, raise an issue for the determination of the court. Indeed, the report and affidavits thereto attached were matters ex parte, not admissible and could have been excluded, on objection by the parties; but, for reasons best known to the defendant, he raised no objection in the lower court and assigns none here as to their introduction; therefore, the report and its accompanying affidavits remain in the record as potent evidence and, in my opinion, reaches the dignity of any other relevant testimony in the case on the issues to which it relates. If incompetent evidence is admitted below, without objection, it has its full weight on appeal. Long & Berry v. Garnett, 59 Tex. 229; Vann v. George (Tex.Civ.App.) 191 S.W. 585; Blair v. Boyd, 61 Tex.Civ.App. 435, 129 S.W. 870, 871; Missouri, K. & T. Ry. Co. of Texas v. Dilworth, 95 Tex. 327, 67 S.W. 88. The commissioners valued the property in issue at $8,550.

Furthermore, the defendant offered in evidence the testimony of one Goodman, and, after qualifying that he had lived in Dallas for seventeen years, engaged in the business of constructing buildings and dealing in real estate, stated that he knew the values of real estate in Dallas, and acquainted with the property in issue, giving details as to value of the property and of oil tanks similar to those located on the property in question. Quoting from his testimony:

"Q. On lot 5, block B, on which is located this brick filling station and these tanks here, I will ask you to tell the court what the reasonable market value of that property would be today, just that lot and equipment and the building on same. A. In my opinion, it is not worth over $3,000.

"Q. How much? A. Twenty Five Hundred to Three Thousand Dollars.

"Q. Including the filling station and tanks? A. That's what I am doing.

"Q. What do you consider the lot adjoining that worth? A. Let me see if I understand you correctly. Which lot do you refer to?

"Q. The next lot to that, lot 5, that is the one where that little old house was? A. I have that valued at $1,500.

"Q. Did you examine the house on lot 11? What did you think that lot and that house worth? A. That warehouse is in

very bad condition. I don't judge it's worth over $2,500.

"Q. From your figures, it is about $7,000 for all of it, the three lots and the stuff that is on there? A. About $7,000 or $8,000."

Mr. Goodman's testimony, as quoted above, evidently covers the equipment on the lots in controversy, and the value of the houses and lots, and places a valuation thereon at $7,000 or $8,000. I interpret his testimony to cover "all of it, the three lots and the stuff that is on there." I am not in accord with the finding of the majority that his testimony only covered the houses and lots, and not the equipment thereon, or that the evidence in the record shows that the report was unequal and unjust to the defendant. True, the report and the testimony of Mr. Goodman controverted that of the testimony of the defendant's witness Rabinowitz, who placed the value of the property at $20,000, and of Martin, who placed the value at $30,725, and of one Staten, who placed the value at $8,937.50. It is clear, however, that the testimony of each of these witnesses, as to value, was based on estimates alone, expressions of opinion. Since the property valuations differ so widely and are so controversal, and the trial court passed upon the issue, this court should not disturb the findings of the court below.

The trial court heard the conflicting testimony and determined the issue in favor of the defendant in error, and, as was said by Chief Justice Jones of this court in the case of State of Texas v. Schepps, 88 S.W. (2d) 88, decided November 2, 1935, where there was, as here, contradicting testimony on material issues, "At most it can only be said that the evidence introduced by the State in this case was conflicting in respect to the material issues of fact decided, and the trial court heard the witnesses, considered their manner of giving testimony, weighed their testimony, and found in favor of appellee, and such finding is binding on this court." This holding has found lodgment in too many cases in this state to cite authorities in its support.

In a very recent case, reaching us at this time through the Texas syllabi, the Commission of Appeals, speaking through Justice Smedley, held in the case of Compton v. Elliott, 88 S.W.(2d) 91, on certified questions, that where the evidence in the case is conflicting upon the issue involved and the trial court's findings are based thereon, the Court of Civil Appeals, 55 S.W.(2d) 247, was not authorized to disturb the findings; and that where a prima facie showing is made by evidence on the issue, the Court of Appeals should not disregard the showing, reverse the judgment, and remand the cause on its merits to the trial court. The majority, in reversing the judgment and remanding the cause to the trial court, with instructions that other commissioners be appointed, is, in my opinion, tantamount to a finding, on controversal testimony, an issue of fact in favor of the plaintiff in error, without the right granted to the adverse party to strengthen her cause, if in fact it needs strengthening to sustain the judgment. The conclusion announced by the majority, in effect, renders judgment in favor of the plaintiff in error, setting aside the report of the commissioners, declaring the report to be unjust and unequal, and directing the appointment of other commissioners, thus depriving the defendant in error, on another trial, the right to support her cause with other and further testimony. Undoubtedly, the evidence disclosed by the record is not so full, complete, and cogent in favor of the plaintiff in error as to foreclose the defendant in error's. Only where, as a matter of law, no other judgment could have been rendered are appellate courts authorized to reverse the trial court and render judgment in the case.

Article 6097, R.S. 1925, provides: "Either party to the suit may file objections to any report of the commissioners in partition, and in such case a trial of the issues thereon shall be had as in other cases. If the report be found to be erroneous in any material respect, or unequal and unjust, the same shall be rejected, and other commissioners shall be appointed by the court, and the same proceedings had as in the first instance." The issues of the fairness and justness of the report perforce of the statute are for a determination of the trial court; and, if the trial court should decide that an unequal and unjust partition has not been made of the property in issue, then other commissioners shall be appointed. The trial court in this case determined the equality and justice of the report, from the evidence, then submitted to it, and, if perchance the evidence is not sufficient to sustain its action, then it becomes a matter on appeal for this court under the law to reverse the judgment and remand the cause to the court below for another trial; but, certainly, this court is not authorized to

direct the trial court to do something which, on another trial, it may find unnecessary and futile. Until the trial court has decreed that the report of the commissioners is unfair and unequal, this court has no authority to direct other commissioners to be appointed.

I am not able to bring myself to believe that the testimony is not sufficient to justify the judgment of the lower court; and/or that this court is authorized to reverse and remand the cause with instructions to the lower court to appoint other commissioners in the absence of a finding that their report is unfair and unequal. I respectfully register my dissent to the majority's conclusion.