JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY V. G. G. GLASGOW ET UX.

No. 7490. Decided July 3, 1940.
Rehearing overruled December 4, 1940.
(141 S. W., 2d Series, 942.)

*George A. Titterington* and *W. H. Reid,* both of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in holding that plaintiff is not entitled to judgment foreclosing its lien upon the 85 foot homestead tract of defendant for the full amount of all three notes of $400.00 each, and in holding that said tract was subject only to liens and foreclosure thereof for one of said notes and for 38/47 of another one of same and not subject to foreclosure for the remainder of said notes and for all of the third of said three notes. Texas Land & Loan Co. v. Watkins, 34 S. W. 996; Smith v. Owens, 107 S. W. 929; Meyer v. Smith, 21 S. W. 995.

*J. C. Muse, Jr.*, of Dallas, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by John Hancock Mutual Life Insurance Company, plaintiff in error, against G. G. Glasgow and wife, Georgia Maud Glasgow, defendants in error, upon a note and for a foreclosure of a lien upon a lot in Junius Heights addition to the City of Dallas, used and occupied by the Glasgows as their homestead. In the trial court judgment was rendered on the note in favor of the Insurance Company against Glasgow and against both defendants for a foreclosure of the lien as prayed for. That judgment was reformed in certain important particulars by the Court of Civil Appeals. 117 S. W. (2d) 888.

The suit arose in this manner: By deed dated February 16, 1923, Mrs. A. M. A. Buchanan and husband conveyed to G. G. Glasgow Lots 6 and 7 in Block 21 of the Junius Heights Addition to the City of Dallas, the lots each having a frontage of 80 feet. The consideration for such conveyance was $2000.00 cash, the execution of G. G. Glasgow of three vendors lien notes payable to Mrs. Buchanan, each for the principal sum of $2022-.21, the assumption by G. G. Glasgow of three notes for $400.00 each, payable to B. R. Packard, and the assumption by him of two paving obligations due the Uvalde Paving Company, each for the sum of $473.06, one of such obligations being secured by a lien upon Lot 6 and the other by a lien upon Lot 7. The deed contained the express provision, which was declared to be binding upon the grantors, their heirs and assigns, that, when the said Glasgow should pay as much as one-half of the three notes executed by him, being the notes for $2022.21 each, the grantors would release the West 75 feet of Lot 6. The deed contained this further provision: "It being agreed and understood that no implied lien is hereby retained on Lot No. 6 (six) for any paving lien or note against Lot No. 7 (seven) and there is no implied lien on Lot No. 7 (seven) for any paving lien or note herein assumed, which is a separate lien on Lot No. 6 (six)."

J. W. Glasgow, father of G. G. Glasgow, paid $1000.00 of the cash consideration of $2000.00. Thereafter G. G. Glasgow and wife by deed dated April 14, 1923, conveyed to J. W. Glasgow the West 75 feet of Lot No. 6, the deed providing that the lot conveyed was subject to all of the liens of record against the same. G. G. Glasgow and wife improved and established their homestead on the 85 foot lot and J. W. Glasgow and wife im-

proved and established their homestead on the 75 foot lot. Subsequently the first of the three notes for $2022.21 each was paid and the second of said notes was transferred by Mrs. Buchanan to Mrs. Phebe B. Glasgow, wife of J. W. Glasgow, and mother of G. G. Glasgow, as her separate property and estate. By the assignment the lien securing that note was made inferior to the one retained by Mrs. Buchanan to secure Note No. 3 owned by her. With the status as above detailed existing, G. G. Glasgow made application to the plaintiff in error for a loan to take up the following indebtedness: First, Notes Nos. 2 and 3 of the three notes for $2022.21 each executed by him to Mrs. Buchanan; 2nd, the three $400.00 Packard notes; and 3rd, that portion of the indebtedness for paving which was secured by a lien on Lot 7. (No complaint is made of that portion of the judgment relating to the paving lien, and it will not be further noticed in this opinion.)

As security for the loan for which he made application, Glasgow offered the 85 foot lot, which was then admittedly his homestead. His application was accepted and thereafter, on July 20, 1926, Mrs. Phebe Glasgow assigned to plaintiff in error Note No. 2, Mrs. Buchanan assigned to it Note No. 3, and Packard assigned to it the three $400.00 notes above mentioned. Each assignment was of the lien securing said respective notes and each recited that it was understood and agreed that the lien therein transferred should be against the 85 foot lot, that is Lot 7 and 5 feet off of Lot 6 only, and each further recited that the 75 foot lot was thereby released from such lien. On the same date that these several assignments were executed, G. G. Glasgow and wife executed a deed of trust on the 85 foot lot in which the plaintiff in error was named as beneficiary, the same reciting that it was given to secure a note for $5900.00, executed in renewal of the above mentioned obligations and liens which had been assigned to it.

The instant suit was brought by plaintiff in error on the note given it by G. G. Glasgow and for a foreclosure of the deed of trust lien on the 85 foot lot. In so far as the judgment awarded the plaintiff in error a recovery on the note against G. G. Glasgow no equestion is presented. The whole controversy is with reference to the validity of a portion of the lien as against the homestead.

■ We shall first consider that question as related to the notes executed by Glasgow to Mrs. Buchanan. As noted above, the loan made by plaintiff in error to G. G. Glasgow, for which the deed of trust was executed as security, was given in part as a

renewal of Notes Nos. 2 and 3 of the series executed by G. G. Glasgow to Mrs. Buchanan, each in the sum of $2022.21. It is the theory of defendants in error, which theory was adopted by the Court of Civil Appeals, that only a part of the indebtedness evidence by those notes represented purchase money for their homestead, and that, to the extent that the renewal note and the deed of trust represented the purchase price of the 75 foot lot belonging to their father same could not be made a valid lien against their home by the process of shifting such lien from the one lot to the other. At the time the application for writ of error was granted we were tentatively of the opinion that the Court of Civil Appeals was in error in upholding such theory, but upon more mature consideration we have concluded that it was not in error.

As above noted, the deed from G. G. Glasgow to his father conveying the 75 foot lot recited that same was conveyed subject to all of the liens of record against it. That recital evidenced an intention on the part of the vendor and vendee that the lot should remain liable for the indebtedness against the two lots to the same extent that it was at the time of the severance. J. W. Glasgow immediately made this lot his homestead. The status then existing was that each of the parties owned a homestead against which there was a joint incumbrance, that incumbrance being for the purchase price of the two jointly and not for the purchase price of either one of them. As between those parties there were no equities calling for a marshalling of assets whereby either lot should be sold first in satisfaction of the incumbrance. When all of this indebtedness was shifted to the 85 foot lot, the home of G. G. Glasgow, there can be no question but that a burden was thereby added thereto and an incumbrance placed thereon which was not wholly for the purchase price of that lot. The deed of trust was executed to secure, in part, the purchase money due upon the lot described therein and, in part, the purchase money due upon the J. W. Glasgow homestead. Any other conclusion would be out of harmony with the spirit, purpose and letter of Article 16, Section 50, of our Constitution, which protects homesteads from forced sale for the payment of all debts except for the purchase money thereof, taxes due thereon and permanent improvements erected in the manner there prescribed. Morrison v. Lazarus, 90 Texas 39, 36 S. W. 426.

We cannot agree that the judgment of the trial court should be upheld upon the authority of Smith v. Owen, 107 S. W. 929. In that case the purchaser of a tract of 458 acres of land,

against which a vendor's lien was created to secure a part of the purchase price, conveyed all of the land except 62 acres upon which he had established his homestead. Thereafter he renewed that part of the note and vendor's lien remaining unpaid as against the homestead only, and the owner of the vendor's lien note released from his lien all of the original 458 acre tract except the 62 acre homestead. The validity of the lien against the homestead was upheld, but it is disclosed in the opinion that the proceeds of the sale of the excess were applied upon the note, reducing the amount thereof from $1405.30 to $111.08, for which amount only the renewal note was executed. That fact clearly distinguishes the case from the instant one.

Neither is the case of Loe v. Bellgardt, 193 S. W. 714, authority for the proposition that the lien is valid in its entirety. That case may be distinguished from the instant one on more than one ground. In the first place, it was an injunction suit, and there was no allegation in the petition that the proceeds derived from the sale of the excess were not applied to erecting improvements on the homestead. In the next place, equities existed in favor of the purchasers of the excess sufficient to work an estoppel against the wife to set up the defense of homestead. It was reasoned that, if she was estopped as against the purchasers, she was also estopped as against the holder of the lien. That situation does not exist in this case. Obviously, the father could invoke no doctrine of estoppel as against his son. He bought subject to the lien and, by so doing, acknowledged and consented that his lot should remain liable for the lien to the same extent as before the severance.

■ Our conclusion with reference to this phase of the case is that the Court of Civil Appeals properly prorated the lien allowing a foreclosure against defendant in error's homestead for only a portion thereof. Whether or not the correct method of arriving at that proportion was employed we are not deciding, for the question was not raised by assignment. The contention here is that the Court of Civil Appeals should not have prorated at all, but should have affirmed the trial court's judgment.

With reference to the three Packard notes, it is disclosed that each of them was secured by a lien on a separate and distinct parcel of land. One was secured by the East 47 feet of Lot 7, another by the West 33 feet of Lot 7, and the East 14 feet of Lot 6, and the third by another strip 47 feet wide on Lot 6. Referring back to the recital in the deed copied near the beginning of this opinion, it will be seen that the liens securing those

notes were not spread over the whole, but each remained against the particular strip to which it was originally attached. One of those notes was secured by a lien upon a strip wholly within Lot 7. As to it the Court of Civil Appeals correctly held that the plaintiff in error was entitled to a foreclosure. As to Note No. 3, which was secured by a lien on a strip wholly within Lot 6, the Court also correctly held that the plaintiff was not entitled to a foreclosure as against the G. G. Glasgow lot. As to the other note, it appears that same was a lien upon 33 feet of Lot 7 and 14 feet of Lot 6. Of the 14 feet of Lot 6 encumbered by this lien 5 feet was a part of the G. G. Glasgow lot, making all but nine feet of this strip within the limits of that lot. The Court of Civil Appeals allowed recovery upon that note to the extent of 38/47th thereof. From what is written above in our discussion of the other series of notes, it is apparent that we approve the principle of prorating the indebtedness securing that note. Whether it should have been by the front foot or upon some other basis, we need not here decide, for no specific question is raised with reference thereto.

We approve the judgment rendered by the Court of Civil Appeals and same is accordingly affirmed.

Opinion adopted by the Supreme Court July 3, 1940.

Rehearing overruled December 4, 1940.