THOMAS G. SAYERS, INDEPENDENT EXECUTOR, V. S. J. PYLAND.

No. 7854. Decided April 29, 1942.
(161 S. W., 2d Series, 769.)

*T. C. Johnson, Jr.*, of San Marcos, for plaintiffs in error.

The Court of Civil Appeals erred in holding that an undivided one-half interest in the property on which vendor's lien was foreclosed was the business homestead of defendant and that such one-half interest was not subject to plaintiff's vendor's lien. Woods v. West, 37 S. W. (2d) 129; 21 Am. & Eng. Enc. of Law 1179; 33 Tex. Jur. 483.

*Tom Gambrell*, of Lockhart, for defendant in error.

The lot in question was the business homestead of Pyland and the instrument executed by him and his wife was an attempt to place additional security on said property and constituted nothing more than a mortgage on said homestead to secure a debt to the plaintiff not arising out of purchase money, taxes, improvements or betterments, and for that reason is invalid. Boone v. McBee, 280 S. W. 295; Jenkins v. Volz, 54 Texas 636; Andrews v. Security Natl. Bank, 50 S. W. (2d) 253.

*Geo. T. Burgess*, of Dallas, file brief as amicus curiae.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit was brought to foreclose a lien on a homestead. The Court of Civil Appeals made the following clear statement of the essential facts involved:

"In 1925, S. J. Pyland owned lots 4 and 5 in Block 16 of the City of San Marcos, the two fronting north on San Antonio Street a distance of 158 1/2 feet and extending back 166 2/3 feet, lot 4 on the east, being a corner lot, bordering upon Fredericksburg Street. A business house, claimed by Pyland

as his business homestead, fronted 100 feet on San Antonio Street, and extended back 100 feet, thus occupying all of the front of lot 5 and a part of the front of lot 4, leaving as vacant property the east 58 1/2 feet of lot 4 on the street corner. There were then outstanding purchase money notes, aggregating $1,187.50 against lot 4, secured by a lien upon that lot. No indebtedness against lot 5 is shown to have existed at that time. On February 28, 1925, Pyland and wife sold and conveyed to T. Z. Williams an undivided one-half interest in both lots 4 and 5. The consideration for this conveyance was that Williams assume one-half of the $1,187.50 against lot 4, execute to Pyland a note for $3,000.00 secured by a vendor's lien on the one-half interest conveyed to him, and a note for $2,648.34, secured by a lien inferior to that securing the $3,000.00 note. The $3,000.00 note was then by Pyland transferred to Jessie A. Sayers. In 1927 Pyland and Williams executed a partition deed, whereby there was set apart to Williams the vacant portion of lot 4, fronting 58 1/2 feet on San Antonio Street, and extending back along Fredericksburg Street a distance of 140 feet; and to Pyland all of the remainder of lots 4 and 5 upon which were situated all of the improvements. At that time there was outstanding against said property a total indebtedness of $6,835.84, as follows: $1,187.50 against lot 4, payment of one-half of which Williams had assumed when he bought the one-half interest from Pyland; the $3,000.00 note owned by Sayers; and the $2,648.34 note, one-half of which was owned by Mrs. Pyland as guardian of the estate of Homer Wimberly, and the other half by S. J. Pyland. The last two mentioned purchase money notes, aggregating $5,648.34, were owed by Williams and their payment secured by liens on his one-half interest in the entire property. In brief, Williams then owed, secured by liens on his one-half interest in the entire property a total of $6,242.09. The net result of the partition agreement was to reduce this indebtedness owed by Williams to $2,056.25 and to fix a lien on the 58 1/2 feet by 140 feet set apart to him. * * *

"This partition deed also provided that in consideration of the property set apart to S. J. Pyland and wife, Pyland assumed the payment of the $3,000.00 note held by Sayers, and further that 'it is expressly agreed and understood that the $3,000.00 note shall constitute a valid purchase money or vendor's lien upon and against the said property so set apart herein to the said S. J. Pyland and wife'."

The suit was brought by the Estate of Jessie A. Sayers, deceased, against S. J. Pyland and wife and others to recover on the $3,000.00 note and to foreclose a vendor's lien on the entire property set aside to Pyland in the partition settlement. Pyland set up the fact that during the years in question he, as the head of a family, had used and occupied the lots in question as a business homestead for the purposes of carrying on his business as a blacksmith and machinist, and contended that the debt sued on constituted a part of the purchase price of only an undivided one-half interest in the property, and that it did not and could not constitute a lien on the other one-half interest therein, because the said property was his homestead at the time the partition agreement was executed. The lower court rendered judgment for the plaintiff for the debt, with foreclosure of lien on Pyland's entire interest in the property. The Court of Civil Appeals held that the debt was secured by a lien on only an undivided one-half interest in so much of the property as was occupied by Pyland as his business homestead, and reversed the case to ascertain how much of the property was so occupied. 148 S. W. (2d) 450.

It is clear that at the time Pyland conveyed to Williams an undivided one-half interest in the lots in question and took the $3,000.00 note in payment therefor, the debt evidenced by said note was secured by a lien on only the one-half interest in the property conveyed to Williams. It is also clear that at the time Pyland and Williams later partitioned the property they undertook to secure the payment of said debt by making the same a lien on the entire interest so set aside to Pyland in the partition. Stripped of unnecessary details, Williams and Pyland were the joint owners of the property occupied by them as a business homestead. They partitioned it, Pyland taking the portion having the improvements thereon, and Williams taking the unimproved portion. In order to equalize the partition, and as a part of the agreement, Pyland assumed and agreed to pay the $3,000.00 note held by Sayers, and agreed that it should be secured by vendor's lien on all of the property set aside to him. It is not contended that the parties were not acting in good faith. We will assume that Pyland occupied the property as his business homestead at the time of the partition. The material question to be determined is whether, in view of the fact that the property was so used and occupied by Pyland as his business homestead, the parties could make said debt a lien on the entire interest in said property set aside to Pyland in the partition settlement. The facts present a novel question

that does not appear to have been heretofore decided by this Court, or by the courts of any other jurisdiction.

Our Constitution, Article XVI, Section 50, provides in part as follows:

"Sec. 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchasing money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, * * *."

Under the above provision of the Constitution, if the debt herein sued on can properly be considered as a part of the purchase money on the entire property set aside to Pyland in the partition settlement, or if it can be said that Pyland's homestead right was subordinate and subject to a prior right in favor of Williams as a tenant in common in an equitable partition of the property to have such a lien fixed on the portion set aside to Pyland, then the debt is secured by a lien on the entire interest set aside to Pyland; otherwise the debt is secured by a lien on only the undivided one-half interest therein previously conveyed by Pyland to Williams.

■ We are of the opinion that the parties had a right to fix a lien on the entire interest set aside to Pyland as security for the $3,000.00 debt. In the outset, it should be noted that the parties were tenants in common, each owning an undivided interest in the property, and that there are certain well-defined rights and obligations that are inherent in and that spring from the relation of tenants in common. Among these is that each cotenant is entitled to occupy the property. The interest of each is coextensive of the property, and extends to every part thereof. While each of them has the right to occupy the property, neither of them has the right to occupy any particular part of it to the exclusion of the other. Each of the parties has a right to demand partition of the property, and upon dissolution of the cotenancy there are certain rights which the parties may assert when the property is so partitioned. For example, it is held that "one cotenant may have an account from another for rents and profits received, waste committed, moneys fraudulently obtained, betterments made, and taxes, etc., paid, either as an incident of a partition suit or otherwise." (14 Amer. Jur., p. 135, sec. 66.) In a partition proceeding the court has a right to adjust all such equities,

and, if necessary to fix a lien to secure the payment of same. Hanrick v. Gurley, 48 S. W. 994, Id., 93 Texas 458, 54 S. W. 347, 356, 55 S. W. 119; Barkley v. Stone, 195 S. W. 925; Wauhop v. Sauvage Heirs, 159 S. W. 185, par. 7; Kalteyer v. Wipff, 92 Texas 673, 52 S. W. 63; 32 Tex. Jur. 172.

It is also well recognized that in partition proceedings the court may, if necessary, divide the property into shares of unequal value, and fix a lien on the larger share in favor of the party receiving the smaller share, for the difference. This difference is usually referred to as owelty. In such cases the owelty so assessed in adjusting the equities is recognized as being in the nature of purchase money secured by a vendor's lien on the larger tract. This principle was announced by Justice Neill in Moor v. Moor, 63 S. W. 347, 351, as follows:

"In partition, where the properties are in several parcels, the owners are not entitled to a share of each property, but only to an equal share of the whole. Claude v. Handy, 83 Md. 25, 34 Atl. 532. When the property is of such a character that it cannot be equally divided without impairing the value of all the portions, it may be divided into shares of unequal value, and the inequality corrected by means of a charge or lien upon the more valuable parts in favor of the less valuable ones. The payment of the amount charged upon the more valuable portion, to equalize the partition, is not a condition precedent to the vesting of such portion in the party to whom it is assigned, but it creates an incumbrance in the nature of a *vendor's lien, which becomes a valid charge upon the purpart against which it was decreed,* which follows the land into the hands of third parties." (Italics ours.)

This Court in the case of Dakan v. Dakan, 125 Texas 305, 83 S. W. (2d) 620, par. 31, in discussing this same subject, said:

"The district court has the power to determine and adjust the rights of the parties in this suit, and may justly treat this as an equitable partition proceeding. In making such partition, all of the property in which the parties are jointly interested should be dealt with as a whole, and partition made, as far as possible, in kind, giving due recognition to the homestead rights. In case a complete partition in kind cannot be had, so as to award each party his or her equitable portion, the court can, if necessary, award certain property to one or more of

the interested parties, *impressing it with a money charge in favor of another*, which charge may be ordered enforced by sale, if not satisfied by payment of the money within a fixed period of time. It may be found that Mrs. Dakan can be awarded specific property in fee, such, for instance, as the homestead property; and her claim to reimbursement for advancements may in this way be adjusted without sale." (Italics ours.)

In 47 Corpus Juris, p. 276, it is said:

"The power to award owelty has, from the earliest times, been regarded as *necessary* to the act of partitioning property; and the parties to a voluntary partition may agree for the payment of owelty to equalize the shares allotted; and where the matter of making the partition is delegated to commissioners, they have the power to award owelty as a necessary incident to the partition. * * * (Italics ours.)

"Ordinarily an agreement for owelty creates a lien or charge upon the land taken under the partition, and this lien may exist either because of an express agreement between the parties providing for it or it may be implied in the absence of such express agreement. * * *"

See also Dailey v. Dailey, 88 S. W. (2d) 96, par. 4, 65 A. L. R. 352. While none of the cases above referred to discuss the right to fix a lien on a homestead, they do demonstrate that the power to charge owelty is a necessary incident to the right of partition and that the charge is recognized as a part of the purchase money and is secured by a vendor's lien on property so set aside to the party receiving the larger share thereof. Certainly none of those cases draw any distinction between homestead and nonhomestead property.

It is apparent, therefore, that one of the inherent rights appertaining to the relation of cotenancy is that if the common property is such that it cannot be divided into equal shares without materially injuring the value thereof, it may be divided into unequal shares and a lien fixed for the difference against the larger share in favor of the recipient of the smaller share. This is a valuable right which each cotenant has, for otherwise the property might have to be sacrificed on an unfavorable market. Such would certainly be the rights of the parties if the homestead question were not involved.

It is also a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be impressed with a homestead right. 22 Tex. Jur., p. 288, sec. 201; Reid v. Howard, 71 Texas 204, 9 S. W. 109. It is likewise well settled that, while one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights and remedies of the other joint owners. He can acquire no such rights as will prejudice or in anywise interfere with the rights of the other tenants in common. 22 Tex. Jur. p. 241; 29 C. J., 849; Clements v. Lacy, 51 Texas 150; Leach v. Leach, 223 S. W. 287, 289, par. 5; Reid v. Howard, 71 Texas 204, 9 S. W. 109; Cooper Co., Inc., v. Werner, 111 S. W. (2d) 823; Massillon, etc. Co. v. Barrow (Com. App.), 231 S. W. 368; Tedder v. Tedder, 115 S. C. 91, 104 S. E. 318, 320. For example, in Clements v. Lacy, supra, it was said:

"Even did we not feel bound by our own decision, we are of opinion that the homestead right, in a proper case, would attach to property held by tenancy in common, but not to prejudice just rights of a co-tenant."

In Reid v. Howard, supra, two parties acquired jointly 320 acres of land. One of them occupied the east half as his homestead, and the other the west half. Afterwards, they dug a well on the east half for their joint use, with the understanding that when the land was partitioned it would be so divided as to allow both of them access thereto. Howard, the owner of the west half, requested judgment for partition so as to allow him access to the well and an equitable half of the land in value. The court found that it would be difficult, if not impossible, to get a well on the west half. The lower court sustained Howard's contentions, and in affirming the judgment this court said: "As to the homestead rights, they attach to the land as acquired, subject to any burden, legal or equitable, upon the land at the time of its occupancy as a homestead. The contract did not need the assent of the wife, and the homestead rights were subordinate to Howard's right to an equitable partition." Likewise, in Tedder v. Tedder, 115 S. C. 91, 104 S. E. 318, 320, it was said that one of the tenants in common was entitled to an accounting from the other, even though the common property was occupied by one of the parties as his homestead. It was there said:

"The right of partition, which includes the right to such

accounting, is paramount to the occupying cotenant's claim of homestead in the common property, because, as between cotenants, the ultimate interest and right of each in and to the common property depends upon an adjustment of the equities between him and his cotenants."

It must therefore be held that when one attempts to fix homestead rights in property of which he is not the exclusive owner, he does so with notice that whatever homestead rights he may acquire therein are subordinate to all the rights and equitable remedies that his cotenant would have in the absence of the homestead claim, including the right to fix a lien for owelty if the same should be necessary to an equitable partition of the property. One cotenant cannot defeat this right in the other by moving onto the property and asserting a homestead right therein. If such a lien could be so fixed in a partition proceeding in court, we see no reason why it may not be done in a voluntary partition by agreement of the parties.

It is true that in this instance Pyland's homestead right had attached to the property prior to the time Williams became a joint owner therein; but the record discloses that after they had acquired their homestead right therein, Pyland and wife, in the manner provided by law for the sale of a homestead, conveyed to Williams an undivided one-half interest in the property, and thereby voluntarily subordinated their homestead right to all the rights and obligations appertaining to the relation of tenants in common. Consequently they thereafter stood in the same position as if their homestead right in the property had been acquired after the parties had become tenants in common in the property.

We are of the opinion that the trial court properly held that the indebtedness in question was secured by a valid lien against the entire interest in the property set aside to Pyland.

This case is distinguishable from the case of John Hancock Mutual Life Ins. Co. v. Glasgow, 135 Texas 470, 141 S. W. (2d) 942. In that case there were two lots, each of which was owned in severalty and used as a homestead by different parties. There was a blanket lien covering both lots. The parties by mutual agreement took the lien off one of the lots and put it on the other. This Court held that an additional burden was thereby placed on the homestead of one of the parties. That

case did not involve a partition between tenants in common and an adjustment of the equities between the parties, as is here involved.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered April 29, 1942.