**In re Jim Bob SHULTS and Nedra Mollie Shults, Debtors.**

**Jim Bob SHULTS and Nedra Mollie Shults, Plaintiffs,**

**v.**

**FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

**Bankruptcy No. 587–50351–7.
Adv. No. 588–5071.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

March 22, 1989.

three specifically described tracts of land in Garza County, Texas, designated as tracts one, two and three and containing a total of 403.3 acres. On April 22, 1988 the Debtors filed an objection to the claim of the FmHA. This Adversary Proceeding was filed on September 9, 1988, contesting the validity of the lien asserted by the FmHA. The facts were stipulated and the matter submitted to the Court on cross-motions for summary judgment.

## FACTS

Guy Shults and wife, Tina Shults, acquired the three tracts in question during their marriage. They had three children, Mary Ann Shults Allison, Hazel Shults Mosely and Jim Bob Shults. Tina Shults died September 12, 1947. Thereafter the three children conveyed their interest in her estate to their father.

In 1969 the Debtors began to live on tracts one, two, and three and established their homestead on those tracts.

Guy Shults died on August 8, 1979 leaving his property equally to the three children; thus, each child acquired an undivided one-third interest in the three tracts. The Debtors continued to claim their interest in the three tracts as homestead [1] namely Mr. Shults' undivided one-third interest in the three tracts with the balance of their 200 acre homestead being comprised of their leasehold rights over a portion of the other two-thirds' interest in the property. A tenant may claim homestead rights in leased premises. *Cry v. J.W. Bass Hardware*, 273 S.W. 347 (Tex.Civ.App.—Texarkana 1925, no writ). The record does not reveal the terms of the lease arrangement between the Debtors and Mr. Shults' sisters.

Nancy Koenig, Asst. U.S. Atty., Lubbock, Tex., and T.E. Toone, Sp. Asst. U.S. Atty., Office of the Gen. Counsel, Temple, Tex., for the FmHA.

Jerry M. Kolander, Jr., McCleskey, Harriger, Brazill & Graf, Lubbock, Tex., for debtors.

## MEMORANDUM OF OPINION ON OWELTY LIEN

JOHN C. AKARD, Bankruptcy Judge.

Jim Bob Shults and Nedra Mollie Shults (Debtors) filed for relief under Chapter 7 of the Bankruptcy Code on April 16, 1987. The United States of America on behalf of its agency, the Farmers Home Administration, (FmHA) filed a proof of claim on September 14, 1987, asserting a lien on

On September 22, 1980 the Debtors acquired the undivided two-thirds interest in the three tracts owned by Mrs. Allison and Mrs. Mosely for $134,466.66. This was accomplished by an "Owelty Deed with Vendor's Lien" from Mrs. Allison, (joined pro forma by her husband) and Mrs. Mosely to

---

1. The rural homestead of a family in Texas is 200 acres with the improvements thereon. Article 16, Section 50 of the Texas Constitution and Texas Property Code, Section 41.002(c).

the Debtors. The Debtors also signed the deed. The deed recited that the cash consideration had been furnished by the United States of America and that a vendor's lien was retained for the benefit of the Government. The description in the deed indicates that all of the three tracts (not just an undivided two-thirds interest) was being conveyed by Mrs. Allison and Mrs. Mosely to the Debtors and the vendor's lien recites that the money was advanced by the Government to the Debtors "to enable them to purchase the property described above."

The deed reserved to Mrs. Allison an undivided one-third interest in the minerals and to Mrs. Mosely an undivided one-third interest in the minerals. It further recited that following the execution and delivery of the deed the minerals would be owned an undivided one-third interest each by Mrs. Allison, Mrs. Mosely and Mr. Shults.

The deed contained the following provisions:

The purpose of this conveyance is, among other things, to effect a partition of the property hereby conveyed among the parties hereto; the Grantors and the Grantees, each owning an undivided interest in said property, which, on account of its character is incapable of partition in kind and it being necessary that said property be sold for purposes of partition.[2]

Grantees hereby join in the execution of this deed for the purpose of accepting the delivery thereof, and acknowledging to the United States of America the validity of the vendor's lien securing the payment of the money so advanced on the whole and the entirety of the herein described property, and the full fee simple title thereto, and do hereby expressly acknowledge that said lien is prior and

superior to any rights of use and occupancy, homestead rights, or other rights of statutory or constitutional exemption which Grantees, or either of them, may have, hold, or claim in and to said property; and Grantees further state and represent that they and each of them, know that the United States of America is advancing the aforesaid sum as part of the purchase price for the interest of the Grantors in said land, in reliance upon the truth of statements and recitals made in this deed, and that the United States of America would not advance said purchase price for Grantors' interest in said land, except for its confidence in and reliance on the representations made and the facts stated in this deed by the Grantees.

On September 22, 1980 the Debtors executed a promissory note for $141,700.00 to the FmHA. This amount included the $134,466.66 paid to Mrs. Allison and Mrs. Mosely.[3] On the same date the Debtors executed a deed of trust to William H. Pieratt for the benefit of the FmHA to secure the note for $141,700.00. The deed of trust covers four tracts of land with tracts one, two, and three being the property described above and tract four being a specifically described three acre parcel of land in Garza County, Texas. The parties acknowledged that the FmHA supplied $7,233.34 for the construction of improvements on tract four which was represented by an appropriate mechanic's lien and therefore constitutes a valid lien on tract four. The deed of trust contains the following provision:

It is further agreed and understood that of the total amount secured hereby, the sum of $134,466.66 was paid by the Government, at the special instance and request of the Borrower, to Mary Ann

---

2. It is difficult for the Court to understand why 403.3 acres of agricultural land would not be capable of partition in kind. Texas law favors partition in kind rather than a sale with partition of the proceeds. *Irons v. Fort Worth Sand & Gravel Co.,* 284 S.W.2d 215 (Tex.Civ.App.— Fort Worth 1955, writ ref'd n.r.e.).

3. The note was renewed by a note dated April 11, 1986 in the amount of $162,958.25 which the

parties agree represents the then unpaid balance on the note of September 22, 1980. Apparently the Debtors did not make the first payment on the note of April 11, 1986 which was due on January 1, 1987 in the amount of $10,185.00 because the original principal amount is still due with interest to April 15, 1987 of $8,237.21. The FmHA asserted that interest continues to accrue.

Shults Allison and Hazel Shults Mosely as the purchase price of the undivided two-thirds (2/3) interest in and to the lands and premises described above as Tracts Nos. 1, 2 and 3, and a vendor's lien securing the payment of said sum against said tracts is hereby acknowledged by the Borrower in favor of the United States of America. Tract No. 4 is the homestead of the Borrower.

## ISSUE

The FmHA asserted that as a result of the owelty lien, it has a valid lien against the Debtors' interest in the 403.3 acres, including the Debtors' interest in the minerals. The Debtors asserted that the FmHA's lien does not cover the undivided one-third interest which Mr. Shults inherited from his father. They do not contest the lien as to the undivided two-thirds' interest (exclusive of minerals) which they acquired from Mrs. Allison and Mrs. Mosely. The Debtors further asserted that they are entitled to designate a specific one-third of this property as their homestead, leaving the FmHA free to foreclose on the balance of the property.[4]

## DISCUSSION

The subject and the problems at hand are clearly described in 68 C.J.S., *Partition* § 15 (1950) which reads as follows:

Owelty is the difference which is paid or secured by one coparcener or cotenant to another for the purpose of equalizing a partition. The power to award owelty has, from the earliest times, been regarded as necessary to the act of partitioning property; and the parties to a voluntary partition may agree to the payment of owelty in order to equalize the shares allotted; and, where the matter of making the partition is delegated to commissioners, they have the power to award owelty as a necessary incident to the partition.

The claim of parcener who takes no part of the estate descended, but surrenders all his interest therein to his coparceners for a stipulated price, to be paid to him not as rent issuing out of the estate, but as a sum in gross to be secured by bond or otherwise, is not a charge for owelty. (footnotes omitted).[5]

The FmHA cites two cases in support of its position that the owelty lien is valid: *Sayers v. Pyland,* 139 Tex. 57, 161 S.W.2d 769 (1942) and *Travelers Ins. Co. v. Nauert,* 200 S.W.2d 661 (Tex.Civ.App.—El Paso 1941, no writ). *Sayers* appears to be the landmark case in Texas on owelty. The El Paso Court of Civil Appeals decided *Nauert* while *Sayers* was under consideration by the Supreme Court and subsequently granted a rehearing to conform its decision to *Sayers.*

Both cases point out that a homestead claim by one cotenant is subject to the right of partition by the other cotenants. The husband and wife in effecting an agreed partition have the power to subject the land awarded them to an encumbrance in order that the land may be equitably partitioned. *Nauert, supra* at 665. In effect the homestead interest is subordinate to the rights of the other cotenants upon partition. *Id.* at 664.

The *Sayers* Court said at page 772:

partition and that charge is recognized as a part of the purchase money and is secured by a vendor's lien on property ...."); *Bouquet v. Belk,* 404 S.W.2d 862, 864 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.) (holding that the law favors partition in kind rather than sale of real property); *Smith v. Hall,* 20 R.I. 170, 37 A. 698, 699 (1897) ("The term owelty is usually, if not universally, applied to partition of lands"); 68 C.J.S. *Partition* § 142 (1950) ("There is no absolute right to an award of owelty, and the courts are disinclined to decree owelty unless it is equitably necessary.").

---

4. This dispute is aggravated by the fact that agricultural land values have fallen drastically in the last several years. No appraisals of this property have been presented but several appraisers have testified in this Court that in the last five to seven years agricultural land values in the high plains of Texas have gone down from 40 to 60%. Presumably appraisals would show that the fair market value of the 403.3 acres at this time would not be enough to satisfy the FmHA's lien.

5. *See also Sayers v. Pyland,* 139 Tex. 57, 161 S.W.2d 769, 772 (1942) ("[T]he power to charge owelty is a necessary incident to the right of

It is also well recognized that in partition proceedings the court may, if necessary, divide the property into shares of unequal value, and fix a lien on the larger share in favor of the party receiving the smaller share, for the difference. This difference is usually referred to as owelty. In such cases the owelty so assessed in adjusting the equities is recognized as being in the nature of purchase money secured by a vendor's lien on the larger tract.

In *Sayers*, there was a lien on cotenant A's interest in the property. When the property was partitioned, cotenant B assumed that obligation and agreed that the lien would exist only on the portion of the property awarded to him. When the holder of the lien sought to foreclose, B asserted that he had occupied the property both before and after the partition as homestead and thus the lien was not valid against the parcel which he had received as a result of the partition. The Supreme Court held the lien to be valid stating "We are of the opinion that the parties had a right to fix a lien on the entire interest, set aside to [B] as security for the $3,000 debt." *Id.* at 771.

In *Nauert* Otto Nauert inherited an undivided one-fourteenth interest in the land in question when his father died. Otto and his wife occupied the land as homestead but paid a crop rent to Otto's mother. When the mother died, her will assumed that she owned the entire property. She wanted to leave equal value to each of her seven children but left specific parcels of real estate to four of them with liens in favor of others who did not receive real estate. Otto was to receive the parcel upon which he lived subject to a lien in favor of one of his brothers, Heinrich Nauert. The executors and the other children conveyed the property in question to Otto subject to a lien in favor of Heinrich which was subsequently transferred to Travelers Insurance Co. Otto joined in similar deeds to the other children receiving real estate.

The Court of Appeals found that this was a partition and based upon the Supreme Court's decision in *Sayers* found the lien to valid.

Both *Sayers* and *Nauert* involved a partition. The partitioning of land is not classified as a conveyance of real estate. *Houston Oil Co. of Texas v. Kirkendall,* 136 Tex. 103, 145 S.W.2d 1074, 1077 (Tex. 1941). In this case no partition was done; there was simply the purchase of the undivided two-thirds' interest in the property from Mrs. Allison and Mrs. Mosely. The FmHA was aware of the circumstances because the note and deed of trust were on FmHA forms and thus prepared by the FmHA or under its direction. The deed of trust specifically recites that the $134,-466.66 was paid to Mrs. Allison and Mrs. Mosely to purchase their undivided two-thirds' interest in the three parcels.

The FmHA asserted that the Debtors "should be bound by their own agreement and prohibited some 8 years later from contradicting their own contract." There would be some validity to this statement if the operative facts on September 22, 1980, would support the FmHA's position, but they do not. The Debtors had lived on the property and farmed it for a number of years, claiming it as their homestead; the FmHA was obviously aware of that. Mr. Shults owned an undivided one-third interest in the property by inheritance from his father; this was a matter of public record and the FmHA is on notice of what the public records would reveal. Further, the FmHA knew, from the statement in the deed of trust, that the Debtors were only purchasing an undivided two-thirds' interest in the three tracts. The FmHA cannot ignore the obvious facts and cannot rely on statements made by the Debtors concerning homestead where these statements conflict with the facts. *Truman v. Deason (In re Niland),* 825 F.2d 801, 808–09 (5th Cir.1987).[6]

---

6. Since the matter was submitted on stipulation, the Court can only speculate as to what transpired at the time the note was signed in 1980, but the facts indicate that the Debtors understood the modern golden rule—"He who has the gold, makes the rules"—and signed whatever documents the FmHA submitted to them.

The Debtors assert that they are entitled to designate a specific one-third of the acres as their homestead, thereby receiving that property free and clear of the FmHA's lien, and that the FmHA gets the remaining two-thirds of the acres free and clear of the Debtors' homestead claim. The Debtors do not cite any authority for this proposition, nor does the Court feel that any exists. The FmHA has a lien on an undivided two-thirds' interest in the 403.3 acres.[7] At this point the Debtors own the entire 403.3 acres but subject to that lien. When the lien is foreclosed, the purchaser at the foreclosure sale will become the owner of the undivided two-thirds interest in the property and become a co-tenant in the property with the Debtors. There will once again be cotenancy with respect to this property, and at that time, partition would be appropriate, either by agreement or a suit for partition.

JUDGMENT ACCORDINGLY.[8]

---

**7.** Being the undivided two-thirds interest which the Debtors acquired from Mrs. Allison and Mrs. Mosely and subject to the reservation of minerals by Mrs. Allison and Mrs. Mosely.

**8.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.