### HUMBLE OIL & REFINING CO. v. RAILROAD COMMISSION et al.

#### No. 8217.

Court of Civil Appeals of Texas. Austin.

April 15, 1936.

Rehearing Denied May 27, 1936.

Powell, Wirtz, Rauhut & Gideon, of Austin, and Hines H. Baker and R. E. Seagler, both of Houston, for appellant.

Hirsch, Susman & Westheimer, of Houston, for appellees.

BAUGH, Justice.

This is a rule 37 case. Appellant, as an adjacent lease owner, sought to set aside as unreasonable, unjust, and arbitrary, an order of the commission granting to appellee J. M. Newman a permit to drill a well on a 2.5-acre tract of land in the Conroe oil field in Montgomery county, and to enjoin the operation of such well, which had already been completed under such permit. The issue was submitted to a jury, which in answer thereto found that such order of the commission was not "unreasonable, unjust and arbitrary," and the trial court denied the relief sought, from which judgment the Humble prosecutes this appeal.

This appeal is from a trial upon the merits. The case has been before this court heretofore on an appeal from an order of the trial court sustaining a general demurrer to plaintiff's petition, and was reversed for a trial upon the merits. See 68 S.W.(2d) 625. The following facts appear: On December 21, 1931, prior to the development of the Conroe field, one Dyess leased from the owners a 31.5-acre tract which included the 2.5-acre tract here involved. On January 15, 1932,

through assignments of portions of said lease, the 2.5-acre tract was segregated from the larger tract. The south and east boundaries of the 2.5-acre tract are straight lines. The west and north boundaries are formed by the meanders of a stream, but the general shape of said tract is substantially that of a rectangle. The location of the well authorized by the commission, and which has been drilled to completion, is 140 feet from the north and south boundaries, 170 feet from the east boundary line, and 205 feet from the west boundary line of said tract. At the time of the original lease, and at the time of the segregation of said 2.5-acre tract from the larger tract, rule 37 provided spacing distances of 150 feet from property lines, and 300 feet from other wells. Subsequent thereto, and after the development of said field, the commission amended said rule 37 as applicable to the Conroe field, on June 14, 1932, to provide spacings of 330–660 feet; and again on July 1, 1932, to provide spacings of 466–933, or a well to each 20 acres. This last amendment was in force and effect, with provisions for exceptions thereto to protect vested rights, when the permit here attacked was granted on April 26, 1933, after hearing, and reaffirmed after a second hearing of protestants on August 10, 1933. The well was completed under said permit when the instant suit was filed on August 30, 1933.

Several contentions are made by appellant, all of which it will not be necessary to consider; the first and principal contention being that the uncontroverted facts of this case bring it within the rules laid down in Brown v. Humble Oil & Ref. Co. (Tex. Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107; Sun Oil Co. v. Railroad Commission (Tex. Civ.App.) 68 S.W.(2d) 609, and companion cases then decided.

It requires no departure from the rules laid down in those cases to sustain the action of the commission in the instant case. It is true that when the permit here attacked was granted, it required an exception to rule 37 as that rule existed when said permit was granted. At that time the spacing provisions required were 466–933 feet. But at the time the 2.5 acres were segregated, spacings under said rule of only 150–300 feet were required. A subsequent amendment to such spacing rule should not, however, be permitted to destroy a property right duly acquired in

keeping with the provisions of such rule as they existed at the time such property was so acquired. And the right to develop said 2.5-acre tract should be determined, we think, by the provisions of rule 37 as they applied at the time the tract in question was segregated. Otherwise, an amendment to such rule, by increasing such spacings between wells, would in effect work a confiscation of vested property rights legally acquired in good faith and in keeping with such rule.

■ Newman's right to such permit should, therefore, be determined under the 150–300 foot spacing requirements of such rule. This involves the question of whether an exact or minute conformity with such provisions is essential as a matter of law, to entitle an owner in good faith to an opportunity to recover his fair share of the oil beneath his land. It is true that in the instant case the distance north and south from said well to property lines was only 140 feet; but to the east it was 170 feet to such line and to the west it was 205 feet. Manifestly the area included within such boundaries was clearly sufficient to meet the 150-foot spacing provisions, had the boundaries of such tract had only a very slightly different configuration. A reasonable application of such rules is all that the law demands, and of necessity the commission should not be required to arbitrarily apply and enforce them with strict exactitude. Where they do so substantially and with reasonable precision in compliance with the spirit and purpose of such rules, the courts should not interfere. Necessarily, latitude must be allowed in their application to meet specific factual situations; and mere slight departures, as in the instant case shown, should be so construed as to carry out, rather than hinder, a fair application of said rule. The uncontroverted physical facts with reference to said 2.5-acre tract here involved, discloses, we think, that Newman was entitled to a permit for such well in substantial and reasonable compliance with the spacing provisions of rule 37 as it existed at the time said tract was segregated. That being true, he was entitled to same to protect a vested right.

■ The testimony of the commission's employees as to what the commission considered a substantial compliance with their rules, and objected to by appellant,

therefore becomes immaterial. Irrespective of such testimony, the undisputed facts demonstrate, we think, that the commission was authorized to conclude that the location of the well applied for was in reasonable and substantial compliance with the spacing provisions in force at the time appellee acquired his property. To hold that they had arbitrarily abused the power vested in them to apply their rules would in the instant case amount to "tampering with trifles." The courts will concern themselves with a review of the commission's action only when there is a substantial basis to indicate unreasonableness or arbitrariness in the orders of the commission so attacked. In the instant case no such basis is, we think, presented.

■ Appellant also contends that the question of whether or not the order of the commission was "unreasonable, unjust and arbitrary" was one of law for the court to determine, and not one of fact to be submitted to the jury. While under the conclusion reached as above indicated, it is not necessary for us to discuss this question, we think appellant's contention is correct. Any controverted factual issue as to what the commission may have done or failed to do, or any controverted factual grounds on which such order was predicated, would undoubtedly be matters for jury determination. But when all the facts and surrounding circumstances have been ascertained, the effect of such order, that is, whether it meets the requirements of the law, is within the powers delegated by law to the commission, and in compliance with their valid rule and regulations is clearly, we think, a question of law for the court to determine; and not one for submission to the jury. The following cases cited by appellant sustain such conclusion: City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528, 47 Am.St. Rep. 114; Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850; Railroad Commission v. Houston & T. C. Ry. Co., 16 Tex.Civ.App. 129, 40 S.W. 526, 1052; Bishop v. State, 122 Tenn. 729, 127 S.W. 698.

The other questions raised by appellant relate to the admission of testimony and the failure of the trial court to define the terms unreasonable, unjust, and arbitrary as used in the issue submitted to the jury. Under the uncontroverted facts, however, and the conclusions above discussed, these

1200

questions become immaterial and need not be further discussed.

The judgment of the trial court will consequently be affirmed.

Affirmed.