RAILROAD COMMISSION OF TEXAS ET AL
v. HUMBLE OIL AND REFINING
COMPANY

No. A-3347. Decided January 9, 1952.
Rehearing overruled February 13, 1952.
(245 S. W., 2d Series, 488.)

*Price Daniel,* Attorney General, *Charles E. Crenshaw,* Assistant Attorney General, for the Railroad Commission, *W Dewey Lawrence* of Tyler, and *J. W. Wheeler,* of Austin, for Leo Bell and Paul Miller, petitioners.

The Court of Civil Appeals erred in holding that the execution of the 1930 lease of the 194 acre tract by Maxwell and Laster constituted a voluntary subdivision of the 194 acre tract from the .95 acre tract in violation of Rule 37. Brown v. Hitchcock, 235 S.W. 2d 478; Lockhart v. Williams, 144 Texas 553, 192 S.W. 2d 146; Stewart v. Smith, 126 Texas 292, 83 S.W. 2d 945.

*Rex G. Baker, Nelson Jones* and *Dillard Baker,* all of Houston, *Powell, Wirtz & Rauhut* and *J. A. Rauhut,* all of Austin, for respondent,

The Court of Civil Appeals correctly cancelled the permit and granted ancillary relief because the .95 acre is such a subdivision as must be disregarded in determining whether the permit was necessary to prevent confiscation of property. Nash v. Shell, 120 S.W. 2d 522; Sun v. Railroad Commission, 68 S.W. 2d 609; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. 2d 73.

MR. JUSTICE SHARP delivered the opinion of the Court.

The Humble Oil and Refining Company filed this suit in the District Court against Stewart Oil Company et al. to vacate an order of the Railroad Commission which granted an application for a permit to drill a certain oil well on a .95-acre tract. The trial court rendered judgment for defendants, and upon an appeal to the Court of Civil Appeals that court reversed the judgment of the trial court and rendered judgment for the Humble Oil and Refining Company. 241 S. W. 2d 364.

The material facts were stipulated, and are as follows: On October 9, 1922, E. B. Alford acquired title by deed to a 73-plus acre tract of land in Rusk County. On April 17, 1916, J. P. Maxwell acquired title by deed to a 200-acre tract of land, which later on, for reasons not important in this case, became a 194-acre tract. The Alford and Maxwell tracts adjoin, the Alford east line being the Maxwell west line. The tract in

issue is a .95-acre tract out of the S. E. corner of the Alford tract. This tract lay outside the Alford fence, and was enclosed by Maxwell's fence since 1916. Maxwell perfected a ten-year limitation title to this .95-acre tract in 1926. Bell and Miller on August 17, 1946, acquired an oil and gas lease on the .95-acre tract. Stewart Oil Company at one time held an interest in this lease, but it was reassigned to Bell. Stewart Oil Company has filed a disclaimer as to said lease. Prior to the relinquishment of its interest, Stewart Oil Company filed with the Railroad Commission an application for a permit to drill Well No. 1 on the .95-acre tract, and the Railroad Commisison granted the application for the permit. Humble Oil and Refining Company filed this suit against Bell and Miller and the Railroad Commission to vacate such order.

On April 11, 1925, Maxwell leased to C. M. Joiner for oil and gas development his 194-acre tract; the .95-acre tract not being included. On November 20, 1929, Maxwell conveyed to E. C. Laster an undivided mineral interest in the 194-acre tract, not including the .95-acre tract, such conveyance being subject to the lease executed by Maxwell on April 11, 1925. The lease to C. M. Joiner expired prior to July 22, 1930. On July 22, 1930, Maxwell leased for oil and gas development the south 150 acres of the 194-acre tract, and on February 14, 1931, Laster executed a similar lease, neither lease including the .95-acre tract.

The lands involved are in the East Texas Oil Field, which was discovered in 1930. It was further stipulated to the effect that no well can be drilled on the .95-acre tract without violating the spacing rules of the Railroad Commission, and that such tract could have been developed with and as a part of either the Alford or the Maxwell tract, by wells drilled in compliance with such rules; and, further, that a well on such tract is not required to prevent waste. It was further stipulated:

"In the light of the foregoing undisputed facts it is agreed that if plaintiff establishes that the .95 acre tract was created by voluntary subdivision which was illegal under the conservation laws and rules (i. e., one which is required to be disregarded in determining the rights to a permit to prevent confiscation of property), plaintiff shall be entitled to prevail in this suit, otherwise defendants shall be entitled to prevail; it being the intention to narrow the issue to the question of law whether the .95 acre is such a subdivision."

The trial court held that the .95-acre tract was not such a subdivision as would deprive the Railroad Commisison of the right to determine whether the permit was necessary to prevent confiscation, and it held that Humble Oil and Refining Company take nothing by its suit. The Court of Civil Appeals held to the contrary, and reversed the judgment of the trial court and rendered judgment for the Humble Oil and Refining Company, based upon the following authorities: Stewart v. Smith, 126 Texas 292, 83 S. W. 2d 945; Empire Gas & Fuel Co. v. Railroad Commission, Tex. Civ. App., 94 S. W. 2d 1240, writ refused; Nash v. Shell Petroleum Corporation, Tex. Civ. App., 120 S. W. 2d 522, writ dismissed; Tex. Jur., Vol. 31a, p. 708. These decisions hold that after the promulgation of the Railroad Commission's spacing rule, owners of a single tract cannot, by their voluntary act, subdivide the tract, through leases or otherwise, and create for themselves, or those claiming under them, the right to additional drilling permits on small strips of land, under exceptions to a spacing rule relating to the protection of vested rights, because to permit them to do so would set at naught Rule 37 and the conservation laws of Texas.

The facts of this case are clearly distinguishable from the facts in the cases cited above. After acquiring the 194-acre tract in 1916, J. P. Maxwell leased the tract in 1925 for oil and gas development. In 1926 Maxwell acquired the title to the .95-acre tract by adverse possession from the E. B. Alford 75-plus acre tract. In 1929 Maxwell conveyed to E. C. Laster a one-fourth undivided mineral interest in the 194 acres, subject to the 1925 mineral lease. The 1925 lease expired in 1930, and in the same year Maxwell leased for oil and gas development the south 150 acres of the 194-acre tract; and Laster thereafter, in 1931, executed a similar lease. In referring to the facts, the Court of Civil Appeals, in considering the 1925 lease, the 1929 mineral deed, and the 1930 lease, stressed the fact that the .95-acre tract was not included in any of those transactions. That court believed that the .95-acre tract should have been included in the 1930 lease, and the failure to do so was the reason why the tract is not entitled to a well. There is no sound reason why the tract should have been included in any of those transactions, because the .95-acre tract was then a separate tract, vested with its own rights, which had been acquired separately in 1926, at a time when the 194-acre tract had already been leased to other parties. The .95-acre tract was not at the time of those transactions in common ownership with the 194-acre tract. The 1925 lease did not constitute a voluntary segregation of the .95-acre

tract, since title to the .95-acre tract had not been acquired at that time. The title to the .95-acre tract was acquired by limitation in 1926, four years prior to the discovery of oil in that territory; and there is no evidence to show that the tract was acquired for oil and gas purposes. At that time there was no occasion to apply the spacing rules, and the Railroad Commission was not concerned with the subdivision of the land made without consideration of oil and gas development. Brown v. Hitchcock, Tex. Civ. App., 235 S. W. 2d 478, writ refused.

When Maxwell leased the 194-acre tract in 1925 for oil and gas development; when he acquired the .95-acre tract in 1926 by limitation; and when in 1929 he conveyed to E. C. Laster an undivided one-fourth mineral interest in the 194 acres, oil and gas had not been discovered in that territory, and such area had not been brought under the jurisdiction of the Railroad Commission because of oil and gas activity. Considering the transactions relating to the .95-acre tract in connection with the spacing rules adopted by the Railroad Commission, it is quite obvious that there was no intention to circumvent any of such rules.

In 1925 Maxwell owned the 194-acre tract and leased it to C. M. Joiner. This was before he acquired title to the .95-acre tract in 1926; and, therefore, in 1926 there could have been no common ownership of the two tracts. At that time they were already two separate tracts, and never was there any segregation of the tracts. In 1929 Maxwell and wife conveyed by mineral deed one-fourth of the minerals to Laster, which was subject to the lease made to Joiner in 1925. There was no common ownership in 1929, either before or after the deed to Laster. In 1930, when the Joiner lease expired, the minerals under the 194-acre tract were then owned by Maxwell and wife and Laster, whereas the entire .95-acre tract was owned by Maxwell and wife. So, in 1930 the tracts were not under common ownership. Maxwell and wife did not create any right in the .95-acre tract which was not already in existence. In 1930, by leasing for oil and gas development the south 150 acres of the 194-acre tract, they created no more right in the .95-acre tract than already existed, and the Railroad Commission held that such action was not a violation of Rule 37. There is no evidence in this case that indicates that Maxwell and wife by their actions created any conditions concerning the .95-acre tract in order to avoid the application of Rule 37. There was no necessity for Maxwell and wife by any voluntary act or connivance on their part to

avoid the Rule, for the .95-acre tract in 1926 acquired the right to a well as a matter of law, and that right was never lost, because as long as the 194-acre tract of land was under lease they took no action with respect to such tract of land which would destroy the vested right of the .95-acre tract. The two tracts were acquired by Maxwell separately, and during the time that both tracts have been owned by him they have never, for purposes of Rule 37, become a unity or one whole tract. Only in the event the two tracts of land came under common ownership and control, so as to constitute one tract of land, would the rule against subdivision have become applicable. The rule against subdivision contemplates the prohibition of a division of a tract of land, or tracts of land, under common ownership, into smaller tracts, for the purpose of acquiring additional permits to drill. Until adjoining tracts come under common ownership and control, no action with respect to either tract can be considered as affecting the other in determining whether or not a subdivision has occurred. Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. 2d 73.

Under the facts of this case the Railroad Commission had the right to issue the permit, and the trial court correctly sustained such order. The Court of Civil Appeals erred in reversing the judgment of the trial court and rendering judgment for the Humble Oil and Refining Company.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered January 9, 1952.

Rehearing overruled February 13, 1952.