## TEXAS CO. v. RAILROAD COMMISSION OF TEXAS et al.

### No. 10012.

Court of Civil Appeals of Texas. Austin.

Feb. 6, 1952.

Rehearing Denied Feb. 27, 1952.

Harry M. Harrington, Jr., Longview, Robert J. Derby, Houston, Black & Stayton by John W. Stayton, Austin, for appellant.

Price Daniel, Atty. Gen., Charles E. Crenshaw, Asst. Atty. Gen., by Dean J. Capp, Asst. Atty. Gen., for Railroad Commission of Texas and its members.

Rex G. Baker, Nelson Jones, Dillard Baker, Houston, Powell, Wirtz & Rauhut by J. A. Rauhut, Austin, for Harry M. Jones.

GRAY, Justice.

This is a Rule 37 case. The question presented is the validity of a special permit granted appellees jointly to drill a well on a 4½ acre tract of land, a part of the H. F. Robinson survey, in the Hawkins oil field in Wood County. Appellee, Humble Oil and Refining Company (later referred to as Humble), owns an oil and gas lease on an undivided three-fourths interest in the tract, and appellee, Harry M. Jones, owns the fee title to the remaining undivided one-fourth interest in said tract. The application for the permit joined these undivided interests for the purposes of the well.

The suit was filed by The Texas Company against the Commission, Humble and Jones seeking to cancel the permit. B. B. Orr intervened as a party plaintiff. From an adverse judgment of the trial court, The Texas Company and Orr have appealed and are aligned together here.

The discovery well in the Hawkins field was completed in December, 1940. The spacing rule for the field was adopted January 4, 1941, and provided that no well (oil or gas) should thereafter be drilled nearer than 933 feet to any other completed or drilling well on the same or adjoining tracts, and nearer than 466 feet to any prop-

erty line, lease or subdivision line; provided for the granting of exceptions to prevent waste or the confiscation of property, and providing further that "the general order of the Commission with relation to subdivision of properties shall be observed." The permit was granted June 4, 1948, "to prevent confiscation of property and to prevent physical waste." The parties stipulated that: "Enough wells have been drilled in the vicinity of the 4.5 acre tract to produce the recoverable oil beneath said tract and it is unnecessary to drill a well on the 4.5 acre tract 'to prevent physical waste' of oil or gas."

Thus, the only question here is whether or not the 4½ acre tract may be developed as a separate tract to prevent confiscation of property as an exception to the rules of the Commission. Appellants say it cannot because the tract is an illegal subdivision within the meaning of the rules.

For convenience in relating the pertinent history of the title to the 4½ acre tract and adjoining tracts, we attach the following map:

Prior to his death in 1922, H. S. Cobb owned in fee all of the H. F. Robinson survey except 50 acres thereof lying immediately south of the railroad right of way. He also owned the south one-half of the J. G. Heard survey. By his will, probated October 3, 1922, H. S. Cobb devised to Minnie Lee Cobb the portion of the H. F. Robinson survey lying north of the railroad right of way. (His other property was devised to Ruby and Rupert Cobb.) Thus, in 1922, Minnie Lee Cobb acquired the fee title to the 4.5 acres, the 1 acre, and the 17.3 or 15.25 acre tracts shown on the map. On March 21, 1923, Minnie Lee Cobb conveyed an undivided one-fourth interest in the land devised to her by the will of H. S. Cobb to the heirs of Mrs. L. A. Wallace. On November 28, 1925, J. M. Henry acquired the fee title to 12 acres out of the east side of the Geo. E. Brewer survey and which 12 acres lies just north of the railroad right of way. On August 5, 1933, J. M. Henry acquired the fee title to 14.6 acres out of the southwest corner of the J. G. Heard survey, and at the same time he acquired from Minnie Lee Cobb all of her undivided three-fourths interest in the west 5.4 acres of that portion of the H. F. Robinson survey lying north of the railroad right of way. On January 9, 1937, J. M. Henry and wife conveyed their undivided three-fourths interest in a 1 acre tract out of the southeast corner of the 5.4 acres to Lura V. Isaacs. This later conveyance left to the Henrys their undivided three-fourths interest in 4.4 acres acquired from Minnie Lee Cobb.

This 4.4 acres is called 4½ acres in the permit, on the foregoing map and in this opinion. On November 8, 1937, J. M. Henry, a widower, executed an oil and gas lease leasing to D. S. Lankford his undivided one-half interest in the 14.6 acres, the 12 acres and three-fourths interest and the 4½ acres. On December 3, 1938, J. M. Henry and his children executed an oil and gas lease to Paul D. Smith leasing to him an undivided one-half interest in the same tracts leased by J. M. Henry, a widower, to D. S. Lankford. An undivided one-half interest in these two leases has been assigned to appellee, Humble, and the tracts

covered thereby have, since prior to July, 1947, been operated by it.

Referring to the map, the 14.6 acre tract lies east of and adjoins the 12 acre tract. The 4½ acre tract is southeast of and adjoins the 12 acre tract, it is south of and adjoins the 14.6 acre tract and lies west of and adjoins the 17.3 or 15.25 acre tract. The 1 acre tract lies southeast of and adjoins the 4½ acre tract and is west or southwest of and adjoins the 17.3 or 15.25 acre tract but said one acre tract does not separate the 4½ acre tract from the 17.3 or 15.25 acres.

Prior to December, 1940, the title and ownership of these respective tracts was as follows: The Henrys owned the fee title to the 12 acres, the 14.6 acres and an undivided three-fourths interest in the 4.5 acres with oil and gas leases thereon outstanding. The heirs of Mrs. L. A. Wallace owned an undivided one-fourth interest in 4.5 acres, the 1 acre, and the 17.3 or 15.25 acre tracts and Lura V. Isaacs owned an undivided three-fourths interest in the 1 acre tract.

After December, 1940, and on January 14, 1941, the heirs of Mrs. L. A. Wallace conveyed to J. O. Cobb their undivided one-fourth interest in the 17.3 or 15.25 acre tract. This conveyance left to the Wallace heirs their undivided one-fourth interest in the 4½ acre and 1 acre tracts. By instruments dated March 29, 1941, and April 25, 1941, the Wallace heirs conveyed to Eugene Talbert their undivided one-fourth interest in the 5.4 acre tract (being the 4½ and 1 acre tracts). On January 29, 1942, Eugene Talbert conveyed to C. A. Peacock an undivided one-fourth interest on the 4½ acre tract retaining to himself his undivided one-fourth interest in the 1 acre tract. Thereafter, C. A. Peacock assigned his undivided one-fourth interest in the 4½ acre tract to appellee, Harry M. Jones, who on May 30, 1947, recovered a judgment in the District Court of Wood County confirming his ownership of said one-fourth undivided interest.

The undivided one-fourth interest in that portion of the H. F. Robinson survey lying north of the railroad right of way (4½

acre, 1 acre and 17.3 or 15.25 acre tracts) was subdivided by the heirs of Mrs. L. A. Wallace by their conveyance to J. O. Cobb of their one-fourth undivided interest in the 17.3 or 15.25 acre tract on January 14, 1941. In March and April, 1941, the Wallace heirs sold their undivided one-fourth interest in the remaining 5.4 acre tract to Eugene Talbert who thereafter subdivided that interest by the conveyance to C. A. Peacock of an undivided one-fourth interest in the 4½ acre tract and retaining such interest in the 1 acre tract.

The foregoing facts conclusively establish that the ownership of the undivided one-fourth interest of the Wallace heirs in the 4½ acre, 1 acre and 17.3 or 15.25 acre tracts continued until after the discovery of oil in the Hawkins field and until after the effective date of the spacing rules applicable to that field, and that after these dates such undivided interest was conveyed as above stated. Also, since March 21, 1923, there has not been common ownership of all interests in the 4½ acre tract.

The record shows that appellant, The Texas Company, has one well on the 17.3 or 15.25 acre tract—it appears it owns an oil and gas lease thereon. Also, there are three wells on the 1 acre tract, which tract is known as the Cobb, Isaacs, Wallick or Randal tract. Humble has one well on the 12 acre tract and one well on the 14.6 acre tract. Appellees, however, say that it is immaterial to the issue of whether or not the permit is necessary to prevent confiscation of property, whether the oil under the 4½ acre tract could be drained by these wells. And to require the 4½ acres to be drained by Humble's wells (on the Henry 12 and 14.6 acre tracts) would deprive Jones of his share of production from the 4½ acre tract and to require the 4½ acres to be drained by the wells on the Cobb, Isaacs, Wallick or Randal tracts would deprive the Henrys of their share of production from said 4½ acres.

We have already shown that Jones holds his interest by reason of a subdivision of an undivided interest. We have also shown that the Henry three-fourths interest was leased to Humble along with the

12 acre and 14.6 acre tracts. If these undivided interests be regarded as separate tracts, then the interest of Jones is not entitled to the permit because such interest constitutes an illegal subdivision. Also, the interest of Humble is not entitled to the permit because its rights to development are relegated to the rights of the lease of which it is a part. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. So regarding the interests, their joinder for the purposes of the permit would not present a valid ground for an exception because it would present a situation brought about by the voluntary act of the parties after the rule had attached to the property. Gulf Land Co. v. Atlantic Refining Co., supra; 31 A Tex.Jur. p. 708, § 411. However, we think we cannot rest our decision here for the reason that common ownership of the 4½ acre tract has not existed since long prior to the date any rule attached to the field. J. M. Henry acquired an undivided three-fourths interest in 5.4 acres on August 5, 1933, and on January 9, 1937, conveyed an undivided three-fourths interest in the 1 acre tract to Lura V. Isaacs. Since that time there has been the outstanding undivided one-fourth interest now held by Jones. Therefore, the undivided interests under consideration here have not, since prior to August 5, 1933, been united as a unity in one whole tract.

The condition of the title to the 4½ acre tract was not created by any act of the Henrys, or Humble, subsequent to the effective date of the rules applicable to the Hawkins field. While this is not literally true as to the interest acquired by Jones, yet his action, or the action of his predecessors in title, in acquiring an undivided one-fourth interest in the tract cannot (absent proof) be said to be a voluntary act of Humble and Jones creating a situation which would circumvent the rules. This is true because no new tract has been created but there has been only a change of ownership in the one-fourth undivided interest of the tract which came into existence, in its present size and shape on January 9, 1937, since which time Humble, and its grantors (the Henrys) have owned an undivided three-fourths interest.

We think the principals of law announced in Barnsdall Oil Company v. Railroad Commission, Tex.Civ.App., 83 S.W.2d 714, error ref., and authorities ther cited, are not applicable to the question here for the reason that, as is there announced, a partition of the lands would call for a permit to drill more wells on the tract than the joint owners were originally entitled to. Here there has been no partition but the permit was issued to the joint owners.

 In Railroad Commission v. Humble Oil & Refining Co., Tex.Sup., 245 S.W. 2d 488, 490, the Court said: "Only in the event the two tracts of land came under common ownership and control, so as to constitute one tract of land, would the rule against subdivision have become applicable. The rule against subdivision contemplates the prohibition of a division of a tract of land, or tracts of land, under common ownership, into smaller tracts, for the purpose of acquiring additional permits to drill. Until adjoining tracts come under common ownership and control, no action with respect to either tract can be considered as affecting the other in determining whether or not a subdivision has occurred. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73."

We conclude the permit was properly issued and the judgment of the trial court is affirmed.

Affirmed.