**F. W. WILLSON, Appellant,**

v.

**The SUPERIOR OIL COMPANY, Appellee.**

No. 6776.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 30, 1954.

Rehearing Denied Jan. 27, 1955.

Harry B. Barnhart, C. K. Bullard, Martin & Bailey, James H. Martin, Dallas, for appellant.

Willard B. Wagner, Herbert W. Varner, Williams, Lee & Kennerly, Jesse J. Lee, Willard B. Wagner, Jr., Houston, for appellee.

FANNING, Justice.

F. W. Willson sued The Superior Oil Company in trespass to try title to recover title and possession of the oil, gas and minerals in the L. B. Henderson Survey in Wood County, Texas. Defendant answered not guilty. In a trial before the court without a jury judgment was entered for defendant. At the request of appellant the court filed findings of fact and conclusions of law. Appellant filed objections to certain findings as well as a request for amended findings of fact and conclusions of law, which the court denied and refused. F. W. Willson has appealed.

The parties agreed that the common source of title was from Margie McCallister et vir, who was owner of the L. B. Henderson Survey in Wood County, Texas, consisting of 294½ acres of land, more or less. On August 16, 1940, the McCallisters conveyed said land to Hester, reserving a one-half interest in all oil, gas and other minerals in and on said land. On September 28, 1940, the said McCallisters executed and delivered to F. W. Willson (appellant herein) an oil, gas and mineral lease covering their undivided one-half interest in said premises for a 20-year fully paid up lease, with no rental or other obligation being required to keep such lease in full force for such term. On May 4, 1943, Willson assigned said lease to Stautberg for a period of 10 years (and so long thereafter as oil, gas or other minerals was produced from said land), and Stautberg on May 12, 1943, assigned same to The Superior Oil Company, appellee herein. By payment of the annual deferment rentals provided in said assignment from Willson to Stautberg (and assigned by Stautberg to Superior), said assignment and lease were continued in full force and effect to May 4, 1953, and so long thereafter as oil, gas or minerals was produced from said land.

In 1943 Hester and wife executed an oil, gas and mineral lease to Nowert covering an undivided one-half interest in said Henderson Survey and said lease by mesne assignments, insofar as it covered the north half of said Henderson survey, was conveyed to F. R. Jackson and his associates, hereinafter referred to as Jackson.

In January 1953, Jackson (and his associates) as owner of an undivided one-half leasehold interest in the north half of said Henderson Survey and appellee as the owner of an undivided one-half leasehold interest in all of said Henderson Survey entered into negotiations for the purpose of drilling an oil and/or gas well on the north half of said survey, which negotiations resulted in the fixing of the terms of such an operating agreement in January 1953. The operative and effective date of the operating agreement was to be February 2, 1953, which agreement was memorialized in an instrument dated February 2, 1953, which was circulated to and executed by the nineteen or more parties who were signatories thereto, residing in Gregg, Harris, Tarrant, Dallas, Red River, McLennan and Hopkins counties, in the State of Texas. The instrument (which had been drawn up and prepared by appellee prior thereto) was first circulated among Jackson and his various associates, who executed it before Notary Publics on the following various dates in 1953: February 12th, 20th, 21st, 27th; March 7th, 10th, 11th, 16th and 18th. On March 30, 1953, the officers of appellee company executed same before a Notary in Harris County, Texas, on behalf of appellee corporation. By the terms of such operating agreement, among other things, a well was to be drilled for the mutual benefit of Jackson (and his associates) and appellee on the north half of said Henderson survey. The agreement states that "all operations herein provided to be conducted for the joint account of the parties hereto shall be conducted for their mutual benefit in the respective proportions of their leasehold ownership in the whole of said land as set forth above." Under this agreement Jackson was to be the operator, and Jackson

(and his associates) and appellee were to bear one-half each of all costs and expenses of drilling the well thereon, whether same was completed as a producer or abandoned as a dry hole.

Jackson on February 17, 1953, as operator (and pursuant to said operating agreement) contracted with Coats Drilling Company for the drilling of the well, and supervised and handled all phases and details with respect to such drilling in his name, including the application to the Railroad Commission for permit to drill. Prior to letting the drilling contract to Coats, Jackson obtained appellee's approval thereof and during the drilling of the well appellee had one of its engineers on the location.

The well was completed as a producer on or about March 19, 1953, prior to the expiration of the primary term (May 4, 1953) of appellee's lease, and at all times since and germane to this suit has produced oil in commercial quantities. On April 28, 1953, and before the expiration of the primary term of appellee's lease, appellee paid to Jackson one-half of all costs of surveying, drilling, operating, and for equipment in accordance with the terms of the operating agreement between them.

The principal question in this case is whether the lease assigned to appellee expired at the end of the primary term on May 4, 1953, or whether under the operating agreement in question and the facts in this case the drilling and completion of the well in question (and commercial production thereafter) extended and kept said lease of appellee in full force and effect.

Appellant in his first three points contends (in essence) that the lease in question which had been assigned to appellee for a ten-year primary term ending May 4, 1953, which did not contain pooling provisions, and which contained the provision, "It is agreed that this lease shall remain in force for a term of 20 years, from this date, said term hereinafter called 'Primary Term', and as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee" expired on May 4, 1953, according to its terms, because the appellee did not comply with the terms of said lease by drilling an oil and gas well on said leased premises, and that the drilling of the well in question by Jackson, a co-tenant, owning an undivided one-half interest under a separate lease containing pooling provisions, would not be a fulfillment of appellee's lease, even though appellee paid one-half of the costs of drilling, etc. Appellant by his fourth point contends that the trial court erred in admitting testimony and documentary evidence pertaining to the chain of title of Jackson. Appellant by his fifth and sixth points complains of various findings of fact and conclusions of law of the trial court and by his seventh point complains of the action of the trial court in overruling plaintiff's objections to the trial court's findings of fact and conclusions of law and in refusing to approve plaintiff's amended findings of fact and conclusions of law.

Appellee contends (in essence) that the drilling of the well in question under the operating agreement in question, and the continuous production of oil in commercial quantities at all times since March 1953, all prior to the expiration of the primary term of appellee's lease, was in compliance with the lease, and that by reason thereof the trial court correctly held that appellee's lease was in full force and effect.

Appellant among other things argues that the lease in question compelled Superior, appellee herein, to drill a well prior to the expiration of the primary term; that Jackson, a co-tenant, applied to the Railroad Commission for a permit to drill a well on the Hester lease, and that the permit was granted to Jackson on the Hester lease; that the operating agreement in question, dated February 2, 1953, was not actually signed by appellee until "March 30, 1953, 11 days after the well was brought in, and was neither a development contract nor a drilling contract, but was solely for the purpose of fixing the obligations of the parties, co-tenants, to pay their share of the expenses to drill their one oil well and fix their respective interest therein, * * * and does no more than to state the law as to duties of co-tenants * * *."

Neither appellant nor appellee has cited a Texas case in point on the principal question involved here and we have not found such a Texas case. Both parties, however, have cited an Oklahoma Supreme Court case, Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 87, 27 P.2d 855, 91 A.L.R. 188, which they each contend is persuasive authority in their favor. Before discussing the Earp case, we think it is well to outline certain principles of law with respect to co-tenancy.

■ The interest of each co-tenant is co-extensive of the property and extends to every part thereof, and while each co-tenant has the right to occupy the property, neither of them has the right to occupy any particular part of it to the exclusion of the other. Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 140 A.L.R. 1164; Cleveland v. Milner, 141 Tex. 120, 170 S.W.2d 472.

■ An oil and gas lease executed by one co-tenant is valid as between the parties, but ineffectual as to the co-tenant of the grantor. Maverick v. Burney, 88 Tex. 560, 32 S.W. 512.

■ Each owner in a co-tenancy acts for himself and no one is the agent for the other nor has any authority to bind the other merely because of the relationship unless authorized to do so. Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125, affirmed 134 Tex. 500, 137 S.W.2d 7; Taylor v. Brindley, 10 Cir., 164 F.2d 235.

■ Owners of undivided portions of oil and gas rights in and under real estate are tenants in common, and an oil and gas lessee of a co-tenant becomes a co-tenant with the co-tenants of his lessor. Burnham v. Hardy Oil Co., Tex.Civ.App., 147 S.W. 330, affirmed 108 Tex. 555, 195 S.W. 1139; 11 Tex. Jur., Sec. 14, p. 442, Sec. 40, p. 465; Prairie Oil & Gas Co. v. Allen, 10 Cir., 2 F.2d 566, 40 A.L.R. 1389; Earp v. Mid-Continent Petroleum Corp., supra.

■ Each co-tenant may enter upon the premises for the purpose of exploring for oil and gas and may drill and develop the premises. *In the absence of a joint agreement,* upon discovery of oil and gas, the producing co-tenant must account to the non-consenting or non-producing co-tenant for his pro rata share of the net profits, that is, the market value of the oil or gas produced, less necessary and reasonable expenses incurred in producing and marketing same; *and if a co-tenant drills a dry hole, he does so at his own risk and without right to reimbursement from his co-tenant* (in the absence of an agreement therefor) *for the drilling costs.* 31 Tex.Jur., Sec. 11, pp. 36–37; Burnham v. Hardy Oil Co., supra; Prairie Oil & Gas Co. v. Allen, supra; Earp v. Mid-Continent Petroleum Corp., supra.

In Earp v. Mid-Continent Petroleum Corporation, supra [167 Okl. 86, 27 P.2d 861], (cited and relied on by both appellant and appellee as above referred to) the defendant Wagner contended that there was an agreement with co-defendant Mid-Continent so as to make the drilling conducted by Mid-Continent the act of himself to perpetuate his (Wagner's) lease from plaintiff Earp. However, the evidence showed that prior to the Earp suit Wagner had sued Mid-Continent on the theory that Mid-Continent's drilling operations were trespasses as against Wagner and were done without the consent of and were forbidden by Wagner. The court held that Wagner was in no position to claim the drilling by Mid-Continent as his own act in order to keep his lease in force, and on this point the court stated as follows:

"We must, therefore, hold that the clear weight of evidence in this case supports the view that as between Mid-Continent Petroleum Corporation and John Wagner and his associates no agreement to cooperate in the development of the common property existed other than a passive and reluctant acquiescence on the part of Wagner and associates. * * *"

However, the Earp case, supra, clearly recognizes the right of co-tenant lessees to enter into valid agreements to develop the common property and we think that portion

of the court's opinion (hereinafter quoted) is highly pertinent to the questions involved here, to-wit:

"There can be no serious question that *when lessees holding under different leases from different lessors enter into an agreement to develop the common property, each agreeing to share in the expense of development and operation, that the development and production accomplished by them as a result of such agreement among themselves is as much the act of one as it is the act of the other and the discovery and production of oil operates as a compliance with the provision of the lease of each of the lessees co-operating in the development. Nor do we think that any particular form of agreement is essential to accomplish this result, it being sufficient if the lessee claiming the drilling operation as a compliance with the terms of his lease can rightfully say that the exploration and development of the premises is his act in whole or in part.* However, in order to claim the act of drilling as his own it is obvious that there must be something more than a mere passive acquiescence in the drilling by another lessee under a separate lease. This for the reason that the lessee of one cotenant is bound as a matter of law to acquiesce in such drilling so long as the same is not conducted in such a manner as to exclude him from exercising a similar right in connection with the same premises." (Emphasis ours.)

Also see the following cases: Moody v. Wagner, 167 Okl. 99, 23 P.2d 633; Wagner v. Earp, 180 Okl. 56, 67 P.2d 782, companion case to Earp v. Mid-Continent Petroleum Corp., supra; Gibson & Jennings, Inc., v. Amos Drilling Co., 196 Okl. 143, 162 P.2d 1002.

In Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 1170, 117 A.L.R. 61, it was held that "one well may without inconsistency serve two purposes."

Appellant in his brief makes the following statement:

"The entering into the so-called operating contact by Defendant and the co-tenant, F. R. Jackson, amounted to no more than a consent on the part of Defendant to the drilling of the oil well and to pay its proportion of the cost and expense incident thereto which it would have been required to do under the Law of Co-tenancy, *except that should there have been a 'dry-hole' Defendant by such consent would have been required to pay ½ of the costs and expenses.*" (Emphasis ours.)

The appellant in his brief also refers to authorities with respect to accounting, implied covenants to develop and offset, and pooling and unitization, which we think are matters not involved in this case. There was no attempt to pool or unitize in this case and this is not a suit complaining of any failure to develop properly.

■ The testimony shows that the terms of the operating agreement were orally agreed to by the parties in January 1953, that appellee's attorneys actually prepared such instrument on or about February 6, 1953, and the instrument on its face (at its beginning) states, "This agreement made and entered into this Second day of February, 1953," etc., and at its conclusion also states, "Wherefore, this instrument is executed as of the date and year hereinabove written." We think it is clear that the parties intended the effective date of the operating agreement to be the date that it bore on its face, to wit, February 2, 1953, and we attach no significance to the fact that the instrument was not actually signed by appellee until March 30, 1953, after the instrument had been circulated among Jackson and his associates. In 10 Tex.Jur., Contracts, Sec. 194, p. 339, it is stated: " * * * the time for which it is to run (referring to a contract) is to be computed from the date it bears and not from the date of its delivery."

■ We have carefully examined the operating agreement in question and have reached the conclusion that it did more than merely embody the law of co-tenancy, and that the drilling of the well in question

pursuant to such joint operating agreement (under the facts in this case) was the act of appellee as well as the act of Jackson and associates, and that the drilling and completion of the well in question and commercial production thereafter extended and kept the lease of appellee in full force and effect. We overrule appellant's first, second, and third points.

We think appellant's fourth, fifth, sixth and seventh points are without merit and same are respectfully overruled.

We think the able and learned trial judge correctly rendered judgment for appellee.

The judgment of the trial court is affirmed.