**RAILROAD COMMISSION OF TEXAS et al., Appellants,**

v.

**C. Murel WILLIAMS, Appellee.**

**No. 10747.**

Court of Civil Appeals of Texas.

Austin.

March 16, 1960.

Rehearing Denied May 18, 1960.

Second Motion for Rehearing Denied June 15, 1960.

Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., John Wilden-

thal, Jr., and Linward Shivers, Asst. Attys. Gen., for R. R. Comm. of Texas.

Henry M. Betts, Thomas Black, Austin, for Southern Natural Gas Co.

Verne Maxwell, Dallas, Frank Douglass, Austin, for American Petrofina Co. of Texas, Black & Stayton, Austin, Powell, Rauhut, McGinnis, Reavley & Lochridge, Austin, of counsel.

Wilson, Spivey & Steger, Tyler, Wallace H. Scott, Austin, and McKay & Avery, Austin, for Reynolds Oil Co.

Looney, Clark, Mathews, Thomas & Harris, James H. Keahey, Austin, for appellee.

HUGHES, Justice.

This is a Rule 37 case. The Railroad Commission of Texas refused appellee, C. Murel Williams, a permit to drill a well for oil and gas on a tract of land containing 1.65 acres in the Joaquin field in Shelby County. The well applied for was a first well and was sought as an exception to spacing Rule 37 to prevent the confiscation of property. Following the refusal by the Commission, appellee filed suit in the court below to compel the Commission, in effect, to grant his application for a permit. Southern Natural Gas Company, Reynolds Oil Company, and American Petrofina Company of Texas intervened and are aligned with the Commission.

Upon trial, judgment was rendered for Williams and the Commission and intervenors have appealed.

The question presented is whether or not the 1.65 acre tract is entitled to a well upon consideration of the status of a 3.3 acre tract, recently partitioned to form the 1.65 acre tract and another equal tract.

The basic facts are without dispute. They follow:

The 1.65 acre tract is the east 1.65 acres of a 3.3 acre tract acquired by H. P. and Ruby Williams, appellee's parents, November 23, 1917, from M. M. Carroll. Also conveyed by the deed from M. M. Carroll to Mr. and Mrs. Williams was an adjoining 37.5 acre tract.

On January 12, 1920, Mr. and Mrs. Williams acquired an adjoining 5 acre tract from J. I. Galloway.

These three tracts combine to form a parallelogram.

On July 10, 1920, Mr. and Mrs. Williams conveyed one half the minerals beneath the 3.3 acre tract to Smith Price. This ownership has remained constant with Price and his widow.

On December 14, 1935, Mr. and Mrs. Williams executed a 10-year mineral lease on the 5 and 37.5 acre tracts to J. T. Perryman who assigned it to Pure Oil Company.

On January 7, 1936, Mr. and Mrs. Williams and Smith Price executed a 10-year mineral lease on the 3.3 acre tract to Ed C. Smith who assigned to J. T. Perryman who assigned to Pure.

Pure assigned its leases, mentioned above, to Southern Production Company, Inc., on September 13, 1940.

On May 15, 1942, Smith Price executed a pooling agreement with Southern Production Company covering his one half mineral interest in the 3.3 acre tract.

On May 21, 1942, Southern Production Company filed in the Shelby County Deed Records an instrument styled "unit designation" by which it combined and unitized as an operating unit for gas, distillate and condensate purposes the leases covering the 3.3. 5 and 37.5 acre tracts.

The Joaquin gas field was opened in 1936.

On July 1, 1942, Southern Production completed a well known as the Addie T. Stephens No. 1 on acreage which was included in the unit containing the three Williams' tracts. This well produced until 1957.

H. P. and Ruby Williams did not authorize the inclusion of their interests in the three Williams' tracts in the Stephens unit. However, Smith Price on May 15, 1942, pooled his one half interest in the 3.3 acre tract with Southern Production Company acreage as part of the Addie Stephens' unit and he participated in production from the Addie Stephens No. 1 during its producing life.

In December 1945 and in January 1946, the oil and gas leases, referred to above, expired, respectively, and on March 13, 1946, Southern Production Company executed a release of the leases as to the 5 and 37.5 acre tracts, and on November 20, 1957, Sinclair Oil & Gas Company, assignee of Southern, released the 3.3 acre tract.

On May 1, 1953, H. P. Williams, through a power of attorney given appellee, executed an oil and gas lease on the 5 and 37.5 acre tracts to Natural Gas Distributing Company. This lease expressly excluded the 3.3 acre tract. A well was completed on the leased acreage July 28, 1953, and still produces.

By warranty deed dated January 16, 1958, H. P. Williams conveyed all of his interest in the 3.3 acre tract to appellee and on December 1, 1958, a consent decree was entered in the District Court of Shelby County partitioning the tract between appellee and the widow of Smith Price each receiving equal tracts containing 1.65 acres, neither of which was of sufficient size to be developed for oil or gas in accordance with the Rules of the Railroad Commission. Mrs. Price received the west 1.65 acre tract and appellee the east 1.65 acre tract.

On March 18, 1958, Mrs. Price leased her tract to S. R. Bright, who assigned to Reynolds October 10, 1958. On May 29, 1958, Reynolds Oil Company applied for a permit to drill on its J. L. Grayson unit stating that such unit included the Smith Price acreage. The Grayson unit contained tracts which had been formerly included in the Stephens unit. Reynolds' application was granted

and production was obtained on lands other than the 1.65 acre tract leased by Mrs. Smith Price.

On December 1, 1958, an agreed judgment was entered in the District Court of Shelby County whereby any cloud placed on appellee's title to east 1.65 acre tract by Mrs. Smith Price, Reynolds, or S. R. Bright was removed.

Appellee concedes that the partition of the 3.3 acre tract into two 1.65 acre tracts was a voluntary subdivision and, of itself, does not entitle his east 1.65 acres to a well. His position is, however, that the 3.3 acre tract was constituted a separate tract for oil and gas development purposes on July 10, 1920, when Mr. and Mrs. Williams conveyed an undivided one half of the minerals under the 3.3 acre tract to Smith Price and that at such time the common ownership and control of the 45.8 (5 plus 37.5 plus 3.3) then existing in H. P. and Ruby Williams was disrupted, never to be reunited.

█ The dimensions of the 3.3 acre tract are in the record and it is not disputed that in July 1920, a well could have been drilled on this tract in compliance with the Rules of the Commission.

If the state of the title had remained unchanged from its condition existing immediately after the 1920 mineral conveyance to Smith Price, we have no doubt but that its owners would be entitled to a first well on it, as any subsequent change in the spacing rules of the Commission are ineffectual to deny such well. Humble Oil & Refining Co. v. Railroad Commission, 94 S.W.2d 1197, Austin Court of Civil Appeals, writ ref.

█ We agree with appellee that the 1920 mineral conveyance to Smith Price created the 3.3 acre tract a separate tract for oil and gas development purposes, Shell Petroleum Corp. v. Railroad Commission, 116 S.W.2d 439, Austin Court of Civil Appeals, writ dismissed; Railroad Commission of

Texas v. Humble Oil and Refining Co., 151 Tex. 51, 245 S.W.2d 488; Texas Co. v. Railroad Commission, 246 S.W.2d 487, Austin Court of Civil Appeals, writ ref. n. r. e.

Appellants, other than Reynolds, seek to distinguish and deny the application of the cases cited above on the ground that in those cases there was not, as here, common ownership of the basic tract. No authorities are cited by such appellants to support this argument and we are not made aware of any principle upon which these cases can or should be disregarded by us. We believe that such appellants, in effect, concede the principle of these cases when they say— "However, for oil and gas purposes the 3.3 acre tract came into existence when it was segregated by an oil and gas lease from the rest of the 45.8 acre tract" on May 1, 1953.

■ Since appellee does not own all of the mineral estate under the 3.3 acre tract and since all of the owners of such mineral estate do not join in application for a permit to drill, we must examine and determine appellee's second principal issue which he states to be:

"2. Where A and B are fee owners of adjoining tracts which must be reconstructed under the Century doctrine (or where they are cotenants), does A's inclusion of his tract (or of his undivided one-half interest) in a unit on which a well is elsewhere drilled destroy the right of the reconstructed (or co-owned) tract to a well?"

Appellee frankly states that this question is one of first impression.

The Century doctrine, referred to by appellee, was first pronounced in Railroad Commission of Texas v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967. This rule permits the owner of an illegally subdivided tract to be "relegated to his rights as they existed" before the illegal subdivision occurred. For a more complete statement of the rule, we quote from Railroad Commission v. Magnolia Petroleum

Co., 125 S.W.2d 398, 401, writ ref., by this court:

"* * * 'Where, independently of the voluntary segregation, the larger tract, including the segregated tract, is entitled to an additional well in order to protect the vested rights of the owners of such larger tract to recover their fair share of the oil thereunder in place, the permit to drill on the segregated tract will be upheld. And this, although the application be made to drill only upon the voluntarily segregated tract and only by the owners of that tract, and be contested by the owners of the remaining portion of the larger tract.'

"The only factual variance of this case from the above quotation is that here Herman's co-tenants in the 25 acres made no protest but consented to the drilling of the well; which variance is manifestly unimportant."

■ We applied this doctrine in Pickens v. Ryan Consolidated Petroleum Corp., Tex. Civ.App., 219 S.W.2d 150, writ ref. n. r. e. There we sustained a permit to drill on a unit consisting of four lots, 2 lots owned by one group and two by another. The well was located by the Commission wholly on property owned by one group and in which the other group had no interest. We expressly conditioned our judgment as being without prejudice to the rights, if any, of those owners of the lots on which the well was not located. The Supreme Court adjudicated those rights, or rather their nonexistence, in Ryan Consolidated Petroleum Corp. v. Pickens, 155 Tex. 221, 285 S.W.2d 201. A harsher, more inequitable result could not be envisioned.

The question presented here is whether the Ryan Consolidated Petroleum Corp. v. Pickens doctrine should be applied when no well has been drilled on the 3.3 acre tract, although a lesser use for mineral purposes has been made of it. We refer to the action of Mrs. Smith Price in leasing her mineral interest in the 3.3 acres to Bright who

assigned to Reynolds which in turn included this acreage in the Grayson unit upon which a well was drilled and is now producing.

We will not discuss the previous inclusion of the 3.3 acres in the Stephens unit because the principle to be applied is the same and because that matter is beset by additional problems.

Appellee concedes, as he must under Ryan Consolidated Petroleum Corp. v. Pickens, that if Mrs. Smith Price had lawfully drilled a producing well on her 1.65 acre tract, the right of such tract to a well to prevent confiscation would be exhausted.

We are so distressed by the inequity of Ryan Consolidated Petroleum Corp. v. Pickens that we have concluded that we should not apply it except under identical facts. We will not extend it. We quote, with approval, from appellee's brief:

"The rule for which Appellants contend is devoid of justice or practicality. Ryan Consol. Pet. Corp. v. Pickens, 1955, 155 Tex. 221, 285 S.W.2d 201 stands for the proposition that each of the parties whose tracts must be reconstructed together to form a tract which is entitled to a well, can apply to have such well granted on his particular tract and that *whosever* application is granted will be entitled to all the oil produced therefrom. Thus, one owner can exercise the reconstructed tract's right to a well; but this occurs under the scrutiny of the Commission, with notice to all parties, and with the courts available for appeal. Appellants would have the same thing accomplished merely by one owner's signing a lease and pooling agreement. The execution of such leases and agreements occurs without any supervision from the Commission, with no notice given to adjoining owners, and with no appeal to the courts. The act is unregulated, unpublicized, and unappealable."

Appellants, except Reynolds, say "Appellee cannot use the 3.3 acres to establish his right to a well without connecting himself with the development of the tract by Mrs. Price. As in the Ryan case cited above, Mrs. Price simply beat appellee to the punch."

This is a principle which we simply cannot accept or condone. We emphatically reject it. That valuable property rights of a person can be so callously destroyed by the act of a stranger, without notice, hearing, or any privilege of defense is contrary to every sense of justice which we possess.

We have not overlooked such cases as Southland Royalty Co. v. Humble Oil and Refining Co., 151 Tex. 324, 249 S.W.2d 914, and Spradley v. Finley, 157 Tex. 260, 302 S.W.2d 409, 411.

These cases merely hold that a person may agree that production from a tract of land not his own may be treated as production from his own land. It is significant to note that in the latter case the court stated:

"* * * In other words a landowner joining in a unitized lease may stipulate that production from one tract included therein, shall not be treated as production from any other tract for the purpose of determining rights under another instrument affecting the title to the latter tract or any part thereof or interest therein. * * *"

These cases recognize the freedom of contract. They are not applicable here because there is no contract for pooling executed by appellee, nor do these cases require us to blind ourselves against the truth and approach this case as appellants, other than Reynolds, say we must "with the assumption that Smith Price drilled a well upon the 3.3 acres and produced hydrocarbons therefrom."

Appellants, other than Reynolds, also contend:

"If H. P. Williams had not conveyed his interest in the 3.3 acres to his son and had himself partitioned the property with Mrs. Smith Price, he would not be entitled to separate development

of the 1.65 acres, because the title thereto would be identical to the title in and to the 42.4-acre tract owned by the same H. P. Williams. This simple proposition appellee cannot dispute."

They, then, proceed to argue that the transaction between Mr. Williams and his son was collusive. We quote from their brief the basis of this contention:

"First, H. P. Williams, through a power of attorney given to his son, appellee, leased his 42.5-acre tract to Natural Gas Distributing Company and deliberately excluded the 3.3-acre area in question. Second, H. P. Williams, on January 16, 1958, conveyed his interest in the 3.3-acre tract to his son. Why? Appellee gives no reason. The record clearly shows the 3.3-acre area was not treated separately and apart from the remaining 42.5 acres either before or after this conveyance but, on the contrary, was under a common fence and so remains. The Railroad Commission in examining this conveyance, coupled with appellee's immediate demand and execution of a partition deed of the minerals with Smith Price's widow on January 17, 1958, one day after the conveyance from father to son, was perfectly justified in ignoring the transaction as being collusive and solely for oil and gas purposes."

Appellants then quote from Tex.Jur. Vol. 31A, p. 708:

"Where a situation that would circumvent the rule is created by the voluntary act or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for exception to the rule."

We relied upon this rule and quoted it in Humble Oil and Refining Co. v. Stewart Oil Co., Tex.Civ App., 241 S.W.2d 364, 366, where we said:

"But for the execution of the mineral deed to Laster there would have been common ownership of the 194-acre tract and the .95-acre tract in Maxwell when the 1930 lease was made.

"The execution of this deed by Maxwell in 1929 was a voluntary act subject to regulation by and control of the conservation rules of the Railroad Commission. Such act, therefore, cannot, under the above authorities, be held to create a condition which can be asserted as a valid ground for an exception to such rules."

Our opinion was reversed. Railroad Commission of Texas v. Humble Oil & Refining Co., 151 Tex. 51, 245 S.W.2d 488.

We find nothing immoral or illegal in the transaction between Mr. Williams and his son and we consider their motives, whatever they may have been, to be immaterial.

■ Finally, it is contended that appellee did not by his application invoke the jurisdiction of the Commission to consider the 3.3 tract as a unit and that the trial court had acted for the Commission in fixing the site for the well. We do not agree.

The application for a drilling permit recited:

"The 1.65 acres constitutes a portion of the C. Murel Williams 3.30 acre tract located in the William Snider Survey, Abstract 685, said 1.65 acres is one-half of the above acreage and the well is applied for as the first well on a 1.65 acre portion of a 3.30 acre tract."

We believe this language was sufficient to invoke the jurisdiction of the Commission to consider the 3.3 acre tract as an entity under the rules of the Commission.

The judgment of the trial court provided "the exact location of such well to be made by the Railroad Commission of Texas in accordance with its established practice." This provision is in literal compliance with our holding on a similar point in Railroad Commission of Texas v. Texas Co., Tex. Civ.App., 298 S.W.2d 666, writ ref. n. r. e.

The judgment of the trial court is affirmed.

Affirmed.

On Appellants' Motions for Rehearing

First we wish to allay any concern by the Commission that we have trespassed upon the rule of capture in oil and gas matters. We have not done so intentionally and do not believe we have done so unintentionally and we disclaim any intention to do so.

We did not discuss the inclusion of Smith Prices' one half mineral interest in the 3.3 acre tract in the Addie Stephens Unit in our original opinion because we believed the principle involved was the same principle we applied in disposing of the contention that its inclusion in the Grayson Unit barred further mineral development. We adhere to this belief.

As to the Grayson Unit the facts are that Mrs. Smith Price leased her mineral interests in the 3.3 acre tract to Bright who assigned to Reynolds who pooled with Grayson to form a unit on which a well was drilled and still produces.

As to the Stephens Unit the facts are that the Williams (appellee's predecessors in title) and Smith Price leased the 3.3 acre tract which lease was ultimately assigned to Southern Production Company. Smith Price agreed with Southern that it could pool his interest in the lease with other lands. This Southern did and formed the Stephens Unit. A well was drilled on the Unit which produced until 1957. Smith Price received his portion of the royalties. The Williams did not agree to this pooling arrangement and did not accept any of the royalties.

We quote the contention made by appellants, other than Reynolds, with reference to the Addie Stephens Unit:

"* * * appellants contend that under well settled rules governing co-tenancy relationships the inclusion of the 3.3 acres in the Addie Stephens Unit by Smith Price affected the entire tract and that under well settled rules relating to pooling agreements production from the unit amounted to production from the 3.3 acres by Smith Price.

"* * * In ignoring the effect of the Addie Stephens Unit the Court did not affect the Ryan case in any way; instead it cast doubt upon time honored and long standing rules of cotenancy and contract law, rules which have been applied again and again in a multitude of cases and situations and which have never been and cannot be questioned from either a legal or equitable standpoint."

Appellants, other than Reynolds, cite Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 771, 140 A.L.R. 1164, for the holding that "The interest of each (cotenant) is coextensive of the property, and extends to every part thereof." They also cite for similar statements Spradley v. Finley, 157 Tex. 260, 302 S.W.2d 409 and Willson v. Superior Oil Co., 274 S.W.2d 947, writ ref., N.R.E., Texarkana Court of Civil Appeals.

These appellants then continue: "This is not to say that Smith Price could include the estate of Appellee's predecessors in the unit, but Smith Price could develop the *entire* 3.3 acres without authority from Appellee's predecessors, and this he did."

We disclaim any intention to cast clouds over settled rules of contract and cotenancy laws. We believe we follow them. For instance, in Willson, supra, the court stated [274 S.W.2d 950]: "An oil and gas lease executed by one co-tenant is valid as between the parties, but ineffectual as to the co-tenant of the grantor," and again "Each owner in a co-tenancy acts for himself and no one is the agent for the other nor has he any authority to bind the other because of the relationship unless authorized to do so."

All that we have held in this regard is that the pooling agreement executed by

Southern as authorized by Smith Price was ineffective as to Williams.

We repeat that we cannot say what we know is not true and hold that production from the Stephen Unit is production from the 3.3 acre tract or that this is made so as to appellee by the agreement of Smith Price alone.

These appellants reargue the equities of this case. Our decision, however, establishes rules and principles which would apply to all similar cases. They should be clear enough to be understood. We should either hold that unauthorized inclusion of a person's land in a drilling unit is binding and the equivalent of production from such land in *all* cases or we should hold it ineffectual in *all* cases. We again take the liberty of quoting from appellee's brief the possible consequences of adopting the first stated alternative:

"A owns a tract of 500 acres, B owns an adjoining tract of .5 acres; the two tracts were voluntarily subdivided after the discovery of oil in the area. Spacing rules, as in the Joaquin Field, call for 640 acre proration units, so that in order to get a well, A must reconstruct his tract with that of B. If the rule of Ryan v. Pickens were followed, and both A and B applied for a well, it is certain that A would get the well and all of the production.

"If Appellants' rule were the law, however, B could go out in the dead of night, lease his .5 acres into an existing unit, and destroy the right of the 500.5 acre tract to a well. A would suffer a tremendous loss, with no protection from the Commission, no notice of B's stealth, and no cause of action against B. Or, more probably, B could use the threat of his leasing his tiny fraction to force A to give him a goodly share of the production from any well A drilled on the tract. The tail would be wagging a dog 1,000 times its size.

"The rule of Ryan v. Pickens allows one owner to exercise the reconstructed tract's right to a well, but it is only after all of the elements of justice and due process have been met. Appellants' rule has no elements of due process, leaves the door open for blackmail and fraud, and is unworkable and unjust. As stated above, we believe this to be a case of first impression on this point. In setting a precedent, we earnestly urge the Court to refuse the rule for which Appellants contend. The only just and workable rule is that established in Ryan v. Pickens towit: Let there be notice and a hearing before the Commission with appeal open to the courts, before the right of a reconstructed tract to a well can be exercised. Let the tract owners come before the Commission and courts and prove which is entitled to a well."

We believe we have correctly decided this case and the motions for rehearing are overruled.

Motions overruled.