Opinion issued October 9, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00429-CV




FRED WAYNE HEAFNER, Appellant

V.

MARY HEAFNER, Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2000-43491




MEMORANDUM OPINION
           Appellant, Fred Wayne Heafner, appeals a judgment awarding his one-half undivided
interest in real property to his co-tenant, appellee Mary Heafner, as damages for her claims
against Fred and ordering that Fred take nothing by his counterclaims. We reverse the
judgment and remand the cause.
 

BACKGROUND
           On August 28, 1996, Gertrude Heafner died, leaving each of her two children, Fred
and Mary, an undivided one-half interest in her estate. The estate included some personal
property and a house and lot on Kipling Street (the Kipling property) in Houston. Fred, who
had lived with his mother before her death, continued to live in the house. Mary did not live
in the house. 
           In August 2000, Mary sued Fred, alleging that, after their mother’s death, Mary and
Fred had orally agreed that Mary would be reimbursed, from the proceeds of the sale of the
Kipling property, for one-half of the funeral and burial expenses for their mother and for one-half of the expenses Mary had incurred in connection with probating their mother’s will. 
Mary further alleged that they agreed that Fred could occupy the Kipling property until
January 5, 1997 and that he would be responsible for maintaining and paying taxes on the
property. Mary alleged that, after January 5, 1997, Fred refused to cooperate with her,
refused to allow her to have personal property belonging to her that had been left in the
house, and refused to allow her to have her portion of the personal property that she had
inherited from their mother. Mary also alleged that Fred disposed of and destroyed personal
property that belonged to her and that she had inherited. Mary alleged that, when she went 
to the property by invitation or court order, Fred would call the police and file charges
against her for theft and trespass. Mary asserted causes of action for conversion of personal
property, abuse of process and malicious prosecution, partition and reimbursement, and
breach of oral agreements. She asked that she be compensated out of Fred’s interest in the
property for the value of the converted property, the funeral expenses paid by her, taxes paid
on the property (including penalty and interest), and her costs to maintain the property. 
           In an amended petition, Mary abandoned her causes of action for abuse of process,
malicious prosecution, and partition. She asserted that the conversion constituted fraud and
added a cause of action for intentional infliction of emotional distress. She requested that
Fred’s one-half interest in the Kipling property be awarded to her as a credit against any sums
awarded to her and that a deficiency judgment against Fred be awarded for any amounts
recovered by her over the value of Fred’s one-half interest in the Kipling property. She also
asked to be awarded one-half the fair rental value for the Kipling property from January 1,
1997 through the date that Fred vacated the premises, as well as costs and attorney’s fees. 
Mary also asserted causes of action against Kate Miller, a prospective purchaser of the
Kipling property. Mary nonsuited Miller on February 22, 2002, but no order of nonsuit or
dismissal was ever signed by the trial court. 
           On June 4, 2001, Mary served interrogatories, request for production, and request for
admissions on Fred by certified mail, return receipt requested.


 The certified mail was
returned unclaimed to Mary’s attorney, with notice of three attempts to deliver. On June 28,
Fred telephoned Mary’s attorney’s office and requested that a copy of the discovery be faxed
to him. Although the discovery was faxed that same day, Fred did not respond timely to
these discovery requests.
           On July 13, 2001, Mary filed a motion for partial summary judgment on all of her
causes of action asserted in her amended petition (which was not filed until more that two
weeks after the motion for partial summary judgment). As summary judgment proof to
support her motion, Mary relied on the deemed admissions. 
           Sometime before September 7, 2001, Fred retained counsel, who, on September 7,
filed a response to the motion for partial summary judgment, a counter-petition, a response
to the request for admissions, and a motion to strike deemed admissions. After a hearing, the
trial court, by written order, denied the motion to strike deemed admissions. The trial court
granted Mary’s motion for partial summary judgment and, on September 27, signed a “First
Amended Judgment Granting Partial Summary Judgment Against Defendant Fred Wayne
Heafner.”


 
           Fred’s counterpetition asserted breach of contract, breach of warranty, and fraudulent
misrepresentation and sought partition by sale of the Kipling property.


 On November 9,
Fred filed an amended counterclaim which abandoned his claims except for partition, and,
on November 16, he filed an amended answer asserting a homestead defense. On March 14,
2002, Mary filed her fourth motion for summary judgment, a no-evidence motion to defeat
Fred’s counterclaims. Fred did not file a response to this motion. On April 5, the trial court
granted the motion in a written order providing that Fred take nothing in the lawsuit and
ordering him to vacate the premises of the Kipling property by 5:00 p.m. on May 6, 2002. 
On April 23, the trial court signed a “First Amended Final Judgment” that included the
language of the April 5, 2002 order and the September 27, 2001 interlocutory summary
judgment order, a finding that Mary had nonsuited defendant Miller, and some additional
language, such as providing the basis for calculating the amount of rent to be recovered by
Mary. Fred filed a notice of appeal and a motion for new trial. At the hearing on the motion
for new trial, Fred made objections to several of the deemed admissions, arguing that the
statements were conclusory and were not proper subjects for admissions. The trial court
sustained the objections to admissions 9, 36, and 41. The trial court then overruled the
motion for new trial by written order. 
DISCUSSION
I.        Mary’s Motion to Dismiss
           Mary has filed a motion to dismiss this appeal and has repeated the same motion in
her brief. She argues that this court is without jurisdiction because Fred did not file his
notice of appeal within 30 days of the date on which the judgment became final and
appealable. Mary contends that the sequence of events is as follows:
           9/27/01         First amended judgment granting partial summary judgment, but
including Mother Hubbard clause, leaving the claim against Miller and
Fred’s counterclaims against Mary; 
 
           11/9/01         Fred’s first amended counterclaim abandoning all counterclaims except
for partition;
 
           2/22/02         Nonsuit of Miller, which made the 9/27/01 judgment final and
appealable;
 
           4/23/02         Notice of appeal filed, 60 days after the judgment became final.

Mary argues that the 9/27/01 judgment became final when she nonsuited Miller on February
22, 2002 and, therefore, the April 23, 2002 notice of appeal was untimely. 
           “Appellate timetables do not run from the date a nonsuit is filed, but from the date the
trial court signs an order of dismissal.” In re Bennett, 960 S.W.2d 35, 38 (Tex. 1997). The
trial court did not sign an order dismissing Miller, but on April 5, 2002, the court signed an
order granting Mary’s fourth motion for summary judgment. That order incorporated the
September 27, 2001 judgment by reference, disposed of all remaining issues, and included
a Mother Hubbard clause, but did not make any reference to the nonsuit of Miller. On April
23, the trial court signed an amended final judgment that disposed of all claims and parties. 
Thus, the notice of appeal, also filed on April 23, was timely filed.
           We deny Mary’s motion to dismiss this appeal. 
II.      Fred’s Issues
           A.       Ruling on Motion to Strike Deemed Admissions
           In his first issue, Fred contends that the trial court abused its discretion in overruling
his motion to strike deemed admissions. Fred argues that he has shown good cause to strike
the deemed admissions by his affidavit, in which he testified that he did not receive the
discovery requests by certified mail and did not receive any notices from the U.S. Postal
Service. However, Fred does not dispute that he received the request for admissions by fax
on June 28, 2001. He asserts that the fact that he called the attorney’s office to request a
copy of the request for admissions established that he did not intentionally disregard the
discovery requests or act with conscious indifference. He contends that the reason that he
did not file responses to the request for admissions after having received them by fax was
that he was informed by someone in the attorney’s office that it was too late to respond. 
           A trial court has broad discretion to permit or to deny the withdrawal of deemed
admissions. Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996). A party attempting to
withdraw deemed admissions has the burden to meet three requirements: (1) the party must
show that there is good cause for the withdrawal, (2) the court must find that the parties
relying upon the deemed admissions will not be unduly prejudiced, and (3) the court must
find that the presentation of the merits of the action will be subserved by the withdrawal. 
Morgan v. Timmers Chevrolet, Inc., 1 S.W.3d 803, 806-07 ((Tex. App.—Houston [1st Dist.]
1999, pet. denied). 
           In this case, the record shows that Fred did not accept certified mail on a number of
occasions. In addition, after having received the request for admissions by fax, he did not
attempt to respond to the request until some time after having retained an attorney. In
addition, there is no evidence to show that Mary would not be unduly prejudiced by the
withdrawal of the admissions or that the presentation of the merits would be subserved by
their withdrawal. We hold that the trial court did not abuse its discretion in denying the
motion to withdraw deemed admissions. 
           Accordingly, we overrule Fred’s first issue. 
 

           B.       Divestiture and Setoff
           In his second issue, Fred contends that the trial court erred in divesting him of his
interest in the Kipling property. In his eleventh issue, Fred contends that the trial court erred
in offsetting any money damages awarded to Mary against Fred’s interest in or share of the
proceeds from the sale of the Kipling property. Fred first complains that, although the
divestiture was made pursuant to chapter 29 of the Property Code, Mary did not show that
the requirements of chapter 29 were fulfilled.


 
           Chapter 29 of the Texas Property Code provides in pertinent part as follows:
§ 29.001.Application of Chapter
 
This chapter applies only to real property that is not exempt from forced
sale under the constitution or laws of this state and is:
 
(1) received by a person as a result of the death of another person:
 
(A) by inheritance;
(B) under a will;
                      . . . .
 
§ 29.002. Petition for Forced Sale
 
(a) A person . . . that owns an undivided interest in real property to
which this chapter applies may file in the district court in a county in which the
property is located a petition for a court order to require another owner of an
undivided interest in that property to sell the other owner’s interest in the
property to the person if: 
 
(1) the person has paid the other owner’s share of ad valorem
taxes imposed on the property for any three years in a five-year period . . . ;
and 
 
(2) the other owner has not reimbursed the person for more than
half of the total amount paid by the person for the taxes on the owner’s behalf. 
 
(b) The petition must contain:
 
(1) a description of the property;
 
(2) the name of each known owner of the property; 
 
(3) the interest held by each known owner of the property;
 
(4) the total amount paid by the petitioner for the defendant’s
share of ad valorem taxes imposed on the property; and 
 
(5) if applicable, the amount paid by the defendant to the
petitioner to reimburse the petitioner for paying the defendant’s
share of ad valorem taxes imposed on the property. 

Tex. Prop. Code Ann. §§ 29.001, 29.002 (Vernon Supp. 2003). 
           That Fred and Mary received the Kipling property by inheriting it under their mother’s
will was not contested. Therefore, to prevail on her request that the trial court divest Fred
of his share of the property and to “sell” it to Mary, Mary had to establish by clear and
convincing evidence that she had paid Fred’s share of the ad valorem taxes for any three
years in a five-year period, that Fred had not reimbursed her for more than half of the total
amount she had paid on his behalf, and that, before filing her petition, she had demanded
payment for the amount of his share that she had paid. 
           Mary did not meet any of these three requirements. In her original petition, she
alleged that she “had to pay for one half of the taxes, penalty and interest that the Defendant
HEAFNER had agreed that he was to be financially responsible for. The Defendant
HEAFNER has still not paid any portion of the taxes, penalty, or interest and the same
remains outstanding . . . .” The pleading does not clarify whether she had paid Fred’s half
or only her own half, which she alleged that he had agreed to pay. The pleading does not
specify the number of years that taxes were paid, the total amount paid, whether Fred made
any reimbursement, or whether she had made a demand before filing her petition. Mary’s
first amended original petition alleged, “The only taxes paid on this real property were paid
by the Plaintiff.” She requested that the court “sell” to her Fred’s undivided one-half interest
in the property, give the remaining value in the property as a credit against any other sums
to be awarded her by the court, and award her a deficiency judgment for any sums not
covered by the value of the property. Again, she did not fulfill the pleading requirements of
section 29.002, nor did she put on any evidence that met the three requirements.


 
Accordingly, an award pursuant to chapter 29 was improper. 
           Fred further complains that the judgment, in addition to awarding Mary 
reimbursement for taxes paid, improperly offset the remainder of his one-half interest against
an award to Mary for “damages based on the actions [of Fred] in an amount that exceeds the
value of [Fred’s] interest in the ‘Kipling property.’” The judgment divested Fred of his
interest in the property and ordered that it be conveyed in fee simple to Mary “in partial
satisfaction for the damages caused by” Fred. Fred argues that the judgment was a self-executing judgment for which there was no basis in the rules or statutes. We agree.
           Even if Mary had complied with chapter 29 by properly petitioning for a forced sale
and had proved her allegations by clear and convincing evidence, the court-ordered sale
would be governed by the procedures set out in section 29.004. There is no provision in
section 29.004 for awarding additional damages as a way of further reducing a co-tenant’s
interest in the property at issue.


 
           We hold that the trial court erred in divesting Fred of his interest in the Kipling
property.


 We further hold that the trial court erred in setting off the money judgment
awarded to Mary against Fred’s interest in the Kipling property. 
           We sustain Fred’s second and eleventh issues.
           C.       Sufficiency of the Evidence
           As a plaintiff moving for summary judgment, Mary was required to establish that
there was no genuine issue as to any material fact and that she was entitled to judgment as
a matter of law. See Tex. R. Civ. P. 166a(c). Mary relies primarily on the deemed
admissions as evidence to support her recovery on her tort and contract claims. Fred
challenges the legal sufficiency of that evidence in issues three through seven. 
                      1.        Intentional Infliction of Emotional Distress
           In his third issue, Fred contends that the evidence does not establish as a matter of law
a claim for intentional infliction of emotional distress. To prevail on a claim for intentional
infliction of emotional distress, a claimant must show that (1) a person acted intentionally or
recklessly, (2) the conduct was extreme and outrageous, (3) the actions caused emotional
distress, and (4) the emotional distress suffered was severe. Twyman v. Twyman, 855 S.W.2d
619, 621 (Tex. 1993). Conduct should be found to be extreme and outrageous only if it was
so outrageous in character and so extreme in degree that it goes beyond all possible bounds
of decency and is atrocious and completely intolerable in a civilized community. Id. 
           The evidence of intentional infliction of emotional distress offered by Mary was
deemed admission 41, which admitted, 
That you have done everything in your power to purposely, maliciously and
intentionally cause emotional distress to your sister MARY FRANCES
HEAFNER from 8-28-1996 through the present, which has cause[d] great
harm and grief to your sister, for which you are responsible for damages to be
paid to your sister MARY FRANCES HEAFNER.

This admission does not establish, as a matter of law, that Fred’s conduct was extreme and
outrageous or that the conduct caused Mary to suffer severe emotional distress. Furthermore,
the trial court sustained Fred’s objection to request for admission 41.
           Mary also relied on deemed admissions 33, 34, and 37 as evidence of intentional
infliction of emotional distress. In these admissions, Fred admits that he had done everything
in his power to avoid service in two lawsuits; that he refused to follow orders of the probate
court or to cooperate in the inventory and preservation of the estate property; and that he
intentionally committed fraud with malice against Mary. These admissions do not establish
as a matter of law that Mary suffered severe emotional distress. 
           We sustain Fred’s third issue. 
                      2.        Conversion
           In his fourth issue, Fred contends that the evidence does not establish as a matter of
law Mary’s claim for conversion of personal property. To prevail on a claim for conversion,
Mary had to show that (1) she owned, had legal possession of, or was entitled to possession
of the property; (2) Fred assumed and exercised dominion and control over the property in
an unlawful and unauthorized manner, to the exclusion of and inconsistent with Mary’s
rights; and (3) Fred refused Mary’s demand for the return of the property, unless Fred’s acts
manifested a clear repudiation of Mary’s rights. See Schwartz v. Pinnacle Communications,
944 S.W.2d 427, 432 (Tex. App.—Houston [14th Dist.] 1997, no writ). 
           Mary relied on deemed admissions 28 and 32 to establish her claim for conversion. 
These admissions stated, 
28. That you removed and converted to your own use personal property
that belonged to MARY FRANCES HEARNER that was stored at her
mother’s house which had a value of $3,000.00. 
                      . . . .
 
32. That $14,000.00 should be deducted from your share of the value
of the property at 1621 Kipling and paid to your sister MARY HEAFNER for
the value of her ½ interest in the personal property in her mother’s estate that
you secreted and destroyed which should and would have gone to MARY
HEAFNER. 

           In admission 28, Fred admitted that he converted property with a value of $3,000
belonging to Mary. In admission 32, he admitted that he “secreted and destroyed” personal
property in their mother’s estate and that $14,000 should be deducted from his interest in the
Kipling property as Mary’s share of the destroyed property. Secreting and destroying the
property manifested a clear repudiation of Mary’s rights. 
           We overrule Fred’s fourth issue.
                      3.        Breach of Oral Agreement
           Mary alleged that she and Fred had an oral agreement that Fred would reimburse Mary
for taxes on the Kipling property and pay one-half of (1) their mother’s burial and funeral
expenses, including a monument for their mother’s grave and the attorney’s fees for
probating their mother’s will, and (2) new locks for the house on the Kipling property. In his
fifth issue, Fred contends that the summary judgment evidence did not establish as a matter
of law that Fred had breached any oral agreement. 
 

                                 a.        Reimbursement for Taxes
           Mary relied on deemed admissions 3, 16, and 20 to show that Fred agreed to
reimburse her for taxes she paid. In admissions 3 and 16, Fred admitted that he never paid
any taxes on the Kipling property. In admission 20, Fred admitted 
That the amount of $10,359.61 should be deducted from your share of
the value of the property known as 1621 Kipling for real property taxes,
penalty and interest, accumulated and not paid on your undivided one-half
interest in the property. 

Contrary to Mary’s claim, in none of these deemed admissions did Fred admit that he had
agreed to reimburse Mary for taxes on the Kipling property. 
                                 b.       Funeral-Related Expenses
           Mary relied on deemed admissions 21 through 27, 38, and 39 as evidence of an
agreement that Fred would pay one-half of the expenses related to the funeral and burial of
their mother. Those admissions stated that Fred had paid nothing for the funeral expenses,
which totaled $9,858.32 and was paid by Mary, and that the following sums, being one-half
of the cost, were to come out of his share of the value of the Kipling property: $4,929.16 for
the funeral, $1,925 for the funeral [sic] plot, $350 for the flowers, $375 for opening and
closing the grave, $69.48 for the funeral reception, $250 for the funeral gown, and $176 for
attorney’s fees to probate the will. In addition, in admission 39, Fred admitted that he was
responsible for payment to Mary of 10% prejudgment interest on the total amount of
$27,144.74, which included the breach-of-contract damages and the conversion damages. 
           Mary also contended that Fred had agreed to contribute toward their mother’s grave
marker in deemed admissions 43 and 44. In admission 43, Fred admitted that a reasonable
contribution from him toward a monument for the grave would be $4,000, and, in admission
44, he admitted that $8,000 was a reasonable sum to pay for the monument.
           Fred did not admit, in any of these admissions, that he had agreed to pay one-half of
the expenses related to the funeral and burial. In deemed admissions 22 through 27, he
admitted only that certain sums “should be deducted” from his one-half interest in the
Kipling property. These admissions do not imply, as argued by Mary, that there was an
agreement that Fred would pay the sums. Likewise, in deemed admission 43, by admitting
that $4,000 was a reasonable contribution, Fred did not admit an agreement to pay. 
                                 c.        New Locks
           New locks for the house on the Kipling property were addressed only indirectly in
deemed admission 39, in which one-half of the cost of new locks, $70.09, was a part of the
total amount on which prejudgment interest was calculated. Mary has not shown an oral
agreement to pay one-half of the cost of new locks. 
           We sustain Fred’s fifth issue.
                      4.        Attorney’s Fees
           In his sixth issue, Fred contends that the summary judgment evidence did not establish
as a matter of law Mary’s claim for attorney’s fees. Fred argues that Mary did not
established as a matter of law the elements necessary to prevail on a claim for recovery of
attorney’s fees: (1) a cause of action for which attorney’s fees are recoverable, (2)
representation by an attorney, (3) presentment of claims, and (4) non-payment for the just
amount owed.


 See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, 38.002 (Vernon 1997).
           Fred did not object in the trial court to the award of attorney’s fees. Therefore, he has
not preserved this complaint. See Tex. R. App. P. 33.1(a). 
           We overrule Fred’s sixth issue. 
                      5.        Fraud
           In his seventh issue, Fred contends that the summary judgment evidence did not
establish as a matter of law a claim for fraud. 
           To prevail on a claim for fraud, Mary must show that (1) Fred made a material
representation of fact, (2) the representation was false, (3) he knew that it was false when
made or he made it recklessly without any knowledge of the truth, (4) he made it with the
intent that it be acted upon by Mary, (5) Mary acted in reliance upon it, and (6) Mary suffered
injury as a result. See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex.
1992). 
           Deemed admission 36 stated, 
That if the value of your one-half interest in the real property at 1621
Kipling is not enough to reimburse your sister MARY HEAFNER for
everything that you owe her and all damages caused to her by your actions that
you agree that this court shall issue a deficiency judgment against you for
fraud.

           Deemed admission 37 stated,
That you intentionally committed fraud against your sister and did it
with malice. 

           Even if we assume that admission 37 proved the first four elements of Mary’s cause
of action for fraud, it did not establish that Mary relied on any misrepresentation by Fred or
that Mary suffered any damages because of Fred’s misrepresentation. Because the evidence
did not support a recovery for fraud, there was no basis for a deficiency judgment as stated
in admission 36. 
           We sustain Fred’s seventh issue. 
           D.       Specificity of Damages and Double Recovery
           In his eighth issue, Fred contends that the trial court erred in not identifying the
amount of damages awarded on each of Mary’s claims. In his ninth issue, Fred complains
that the trial court awarded double recovery on Mary’s claims. Fred did not object in the
court below to the judgment on these grounds. Therefore, these issues are not preserved for
review. See Tex. R. App. P. 33.1(a). 
           We overrule Fred’s eighth and ninth issues. 
           H.      Fred’s Counterclaims
           In his tenth issue, Fred contends that the trial court erred in dismissing his claim for
partition and his homestead “claim” on his share of the sales proceeds from the sale of the
Kipling property. 
           Fred’s homestead claim was an affirmative defense, not a counterclaim. When one
co-tenant asserts a homestead claim on his undivided interest in real property, his homestead
rights are subordinate to all the rights and remedies another co-tenant would have in the
absence of the homestead claim. Sayers v. Pyland, 161 S.W.2d 769, 773 (Tex. 1942); see
also Laster v. First Huntsville Prop. Co., 826 S.W.2d 125, 131 (Tex. 1991) (concluding that,
after court-ordered right of ex-wife to use and occupancy of home ended, ex-wife’s
homestead rights in 73% undivided interest in home did not prevent forced sale and partition
of proceeds). Fred implicitly recognized this principle in his amended counterclaim because
he asked for partition by sale. Upon partition by sale of the property, Fred’s undivided
interest would have received the protection of his homestead rights, provided that he had
proved his homestead claim. However, Fred did not complain, in his motion for new trial
or his objection to the final judgment, that the trial court did not partition the property. 
Therefore, he has not preserved this issue for review. See Tex. R. App. P. 33.1(a).
           We overrule Fred’s tenth issue.
CONCLUSION
           Having sustained Fred’s issues two and eleven challenging the divestiture of his
interest in the property and the offset of damages against his interest, and issues three, five,
and seven challenging the sufficiency of the evidence to support awards for intentional
infliction of emotional distress, breach of oral agreements, and fraud, we reverse the
judgment of the trial court and remand the cause for further proceedings consistent with this
opinion. 
 






                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Chief Justices Hedges, Nuchia, and Higley.